## BECK v. TRADERS & GENERAL INS. CO.

No. 27854. Feb. 21, 1938.

Rehearing Denied March 15, 1938.

Suits & Lewis, for plaintiff in error.

Gibson & Savage and Monnet & Savage, for defendant in error.

BAYLESS. V. C. J. O. V. Beck is an oil operator who lived at Nocona, Tex., and employed several men in his operations. In 1934, he had a policy of workmen's compensation insurance issued by Traders & General Insurance Company, a corporation. covering his operations, including drilling operations, in the state of Texas. It is agreed that this policy, by virtue of the statutes of Texas which were ingrafted on it, had an extraterritorial effect; that is to say, any of Beck's employees injured outside the territorial limits of Texas could file their claims with the Texas courts or administrative boards and receive the protection and benefits accorded them by the policy. Beck was conducting lease operations in Oklahoma, and had procured from the State Insurance Fund a policy of workmen's compensation insurance covering these operations. but drilling operations were expressly excluded. About June. 1934. Beck desired to undertake certain drilling operations in Oklahoma. just across the line from his Texas home, and knowing that his Oklahoma policy did not cover these operations, he applied to the agent of the company issuing his Texas policy to ascertain whether it covered drilling operations in Oklahoma. This agent advised he was unable to answer, but would procure the information from the company. This agent consulted the officials of the company orally, and orally advised Beck that he was covered. Beck declined to accept oral statements, and desired a letter. A letter was then written by the company to the agent, and was, by the agent, delivered to Beck. This letter reads:

"Confirming telephone conversation with you on June 16th, we are writing you relative to the 'extraterritorial feature of the Texas Workmen's Compensation Act.'

"If the assured employs men in the state of Texas and takes them into the state of Oklahoma to perform work for him, in connection with the operations described in declarations of the policy, then such employees are entitled only to such rights and benefits under the Texas Workmen's Compensation Act. Likewise, the employer has full protection.

"The extraterritorial feature, however, becomes inoperative after a period of one year. as the law holds that after a person has lived in a state for a continuous period of one year he then becomes a citizen of that

state in so far as his rights are concerned under Workmen's Compensation Law.

"Trusting this is the information you desired, we. * * *"

Following receipt of this letter, Beck began drilling operations in Oklahoma. The employee whose claim is the basis of this action lived in Texas, but came into Oklahoma each day to work and returned to his home each day when his work was ended. He was employed in the drilling operations. In December, 1934, while both policies were in effect, he sustained an injury. He filed a claim with the Texas Industrial Accident Board, and later filed a claim with the Industrial Commission of Oklahoma, both claims covering the same injury. Beck furnished the company with information regarding both claims and requested coverage. With respect to what we are now about to relate, the chronology is not definite. The State Insurance Fund was a party to the Oklahoma claim, but was later released upon its plea that its policy did not cover drilling operations in which employee admittedly was injured. The company apparently stood ready to make good its coverage under the claim filed in Texas, but inquired of the employee which claim he elected to pursue. Employee elected to pursue the Oklahoma claim, gave the company a written election to that effect, and upon the filing thereof with the Texas board, the Texas claim was dismissed. Thereupon, the company denied liability to Beck under the policy, and declined to appear in the Oklahoma claim, and advised him to pursue his remedy against the State Insurance Fund. Employee prosecuted the Oklahoma claim, whereupon Beck attempted to have company made a party to the proceedings, and when the State Industrial Commission refused his application to this effect, he appealed. This court affirmed in Beck v. Davis, 175 Okla. 623, 54 P.2d 371. We held, in substance, that the Industrial Commission had no authority to determine an issue between an insurance carrier and employer as to whether a contract of insurance existed between them. Beck thereupon paid Davis his award, and brought this action in the district court of Oklahoma county, against company to recover $5,353.47, the amount he had expended in defending the claim and in paying the award. Judgment was for the company, and Beck appeals.

A paragraph of the amendment to petition, filed by Beck, will disclose the general theory upon which the action was brought:

"That on or about the 16th day of June, 1934, plaintiff advised the defendant's agent, Ernest Curlin at Nocona, Tex., that he desired to move or transfer some of his men and operations into the state of Oklahoma, and made inquiry of the said Ernest Curlin whether said Workmen's Compensation Insurance Policy would cover his men and operations in the state of Oklahoma; and further stated to the said Ernest Curlin that he desired and wanted full coverage for his men and operations in said state of Oklahoma, and was advised by the said Ernest Curlin that he would take the matter up by telephone with the General Office of the defendant at Dallas; that thereafter the said Ernest Curlin, as agent and acting for said defendant, called this plaintiff and advised him that he had talked with the General Office of the defendant in Dallas, and that according to the construction placed upon the Workmen's Compensation Insurance policy held by plaintiff, plaintiff would have full coverage for his men and operations in the state of Oklahoma, as evidenced by a letter written to said agent by E. H. Douglas, underwriter for said defendant, a copy of which letter is hereto attached, marked Exhibit No. 1, and made a part of this numerical paragraph." (Said letter is quoted above.)

Beck alleged further that in pursuance of the information furnished in said letter, and in reliance on the construction placed upon his said policy by the defendant, he moved his men and operations into Oklahoma and began the operations which resulted in the injury and employee's claim. Upon the record as a whole, it is apparent that the plaintiff is relying upon the construction placed upon the contract by the company, and upon the acts and conduct of the parties thereto thereafter as the basis of his action.

The company takes the position that the policy was plain and unambiguous upon its face, that the construction placed upon it in their letter and the subsequent conduct of both parties are consonant therewith and do not support Beck's contention, and that, in any event, when a contract is plain and unambiguous on its face, extrinsic facts cannot be resorted to as an aid to construction of the contract.

Beck's contentions are as follows:

"(1) The interpretation placed upon the insurance policy by the parties should be adopted by the court as controlling.

"(2) If the insurer construed the policy as not affording protection requested and expected by insured in Oklahoma at the time insured commenced work in Oklahoma, then the insurer perpetrated fraud and deceit upon the insured."

While the purpose of company's brief is to meet and refute the contentions of Beck's

brief. this is not carried out by directly meeting these contentions. The company makes two contentions:

"(1) Under the express provisions of the policy the defendant has no liability to the plaintiff by reason of any claim asserted by an employee under the Workmen's Compensation Law of Oklahoma.

"(2) The defendant did not enter into any agreement or place any construction upon the policy inconsistent with the provisions thereof."

It seems to us that company's first contention is beside the issues presented by Beck. In the argument of the brief company says:

"There is no ambiguity in the following language found in the policy:

" '* * * Nothing herein contained shall operate to so extend this policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached.' "

It cites cases in support thereof with which we do not disagree. But Beck does not contend that the contract, as actually first issued, in express terms covered operations in Oklahoma under the Oklahoma Workmen's Compensation Act. His contention, as we understand it, is that he did not know whether it did, and he desired information thereon from the company. We understand Beck to base his right against the company upon their interpretation of the contract in response to his query, and his reliance thereon, and the actions of both parties thereafter. Therefore, it must be taken as admitted the contention of the company that the policy of insurance, as issued, did not purport to cover an award to employee of Beck, made by the state of Oklahoma for an injury sustained in Oklahoma.

The contentions made by Beck cover two points: (1) A construction of a contract by the parties; and (2) a species of estoppel against the company now asserting that Beck has no protection under the policy in the light of the circumstances.

In direct answer to this, company relies upon the general rule that there is no reason for resort to extraneous matters in aid of construction of a written contract plain and unambiguous on its face. This rule is so well known as to not require citation of authority. This rule has a corollary, that construction of a contract on its face is a matter of law for the courts. Company insists these rules apply irrespective of the views of the parties thereon, or their acts

done thereunder evincing a different understanding of the contract.

After considering the record and weighing and contrasting the views and positions of the parties, we come to the conclusion that the judgment in favor of the company must be affirmed.

Beck had full coverage under this policy in Texas. By virtue of the extraterritorial effect of the policy, the foregoing statement is broader than would at first appear. Not only was Beck covered in Texas as to injuries sustained by his employees in Texas; but, when any of his employees, hired in Texas, were injured outside the state, Beck was covered if their workmen's compensation claims were filed before the board in Texas to obtain the benefits of the Texas law.

We do not believe the letter which the company wrote to its agent, and which the agent published to Beck, goes beyond the express terms of the policy. The letter purports to contain an exposition of "the extraterritorial feature of the Texas Workmen's Compensation Act." It then states that any employee hired in Texas and taken into another state to perform services covered by the policy is "entitled only to such rights and benefits under the Texas * * * Act." It is argued by company, and not disputed by Beck, that claims for such injuries must be filed in Texas. The last sentence of the paragraph says, "likewise (in the like manner) the employer has full protection." This means, in so many words, that employer has full protection the same as the employees under the Texas act.

Beck says that he was seeking full protection—that is, protection under all circumstances, and that he relied upon this letter as extending such to him. We believe that he has imported a promise or meaning from this letter not justified by its language.

Beck points out that he reported his operations in Oklahoma to company and paid a premium thereon, and company is now estopped, or at least ought not to be heard, to say that it extended no coverage for these premiums collected. Company counters this argument by pointing out that, since it did labor under an obligation to pay these employees, engaged in Oklahoma, any compensation awarded them in Texas for injuries sustained in Oklahoma, it had a legal right to collect such premiums. It seems to us that this argument is conclusive. Some effort was made by Beck to go into the ques-

254

tion of the amount of premiums thus collected and to ascertain whether such premiums included an allowance for additional liability assumed. The court refused to admit such evidence and an exception to the ruling was taken, but it is not presented here.

Much depended upon the election of the injured employee. The employer was obliged by law, whether he operated in Texas or Oklahoma, to furnish compensation coverage to his employees. He knew this, and the record indicates that he took steps to fulfill this obligation. We do not know what were the exact terms of his inquiry to the company, since it was oral and was transmitted through the agent. For fear of a misunderstanding, he declined to take oral representation. He received and relied upon a letter. We believe he misjudged the letter. He was in a position of being covered if his injured employees filed the claim in Texas, as several of them did, or of being not covered if the employee elected to pursue his claim in Oklahoma. We do not believe that Beck realized this. We are convinced that the company did. But we do not believe that the company withheld its views from him in an improper manner, but, on the contrary, communicated them to him.

Beck endeavored to show that the claim adjuster for company misrepresented the facts to the injured employee in order to induce him to elect to pursue his claim in Oklahoma, rather than in Texas. The court excluded this offer of evidence as being immaterial. This court has had occasion to consider an election under our Compensation Law and to hold that an election induced by misrepresentation is not a free election. Ladd v. Hudson, 143 Okla. 174, 288 P. 331. However, no issue was made in the pleadings on this point. The evidence was not material when offered, and Beck did not ask to amend or pursue further the issue involved in the offer.

A general statement of the rule of practical construction is found in 13 C. J. 546, section 517:

"Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great, if not controlling, weight in determining its proper interpretation. * * * The practical construction put on a contract by the parties cannot control the express unambiguous provisions of the instrument itself. * * * The meaning of a contract cannot be established by the construction placed on it by one of the parties, unless such interpretation has been made to and relied on by the other

party. And, where the acts of the parties are such as to give nearly equal grounds for opposite conclusions as to their intention, it is evident that but little aid to the construction may be derived therefrom."

The construction of one party (Beck) cannot be permitted to control, and where the acts of the parties evince contrary understandings, and each party's acts result in nearly equal grounds of the different understandings, it is clear that there is no practical construction to overcome the language of the contract.

Judgment affirmed.

OSBORN, C. J., and WELCH, CORN, and HURST, JJ., concur.