**UNITED STATES for Use and Benefit of MOSELEY v. MANN et al.**
**GREAT AMERICAN INDEMNITY CO.**
**v. LOYD.**

Civ. A. No. 2883.

United States District Court
E. D. Oklahoma.

Sept. 29, 1951.

Melvin F. Adler, Fort Worth, Tex., and George A. McCall, Weatherford, Tex., for the plaintiff.

Crouch, Rhodes & Crowe, Tulsa, Okl., and W. B. Handley, Dallas, Tex., for defendant Great American Indemnity Co.

George M. Ritchie, Mineral Wells, Tex., for defendant K. W. Mann.

C. P. Gotwals, Muskogee, Okl., and Ira Butler, Fort Worth, Tex., for Ernest Loyd.

WALLACE, District Judge.

This action arises under the Miller Act of August 24, 1935, 49 Stat. 793, 40 U.S.C.A. §§ 270a–270d.

On the 10th day of June, 1949, the defendant K. W. Mann entered into a contract with the United States for the construction of a flood control detention reservoir near the City of Duncan, Stephens County, Oklahoma. One of the provisions of this contract, which will hereinafter be referred to as the construction contract, was that partial payments would be made by the Government from time to time on estimates made by the government contracting officer as the work progressed.

Pursuant to 49 Stat. 793, 40 U.S.C.A. § 270a(a) (2), defendant Mann delivered a payment bond to the United States in the sum of $15,061.94. The bond was executed on July 11, 1949, with the defendant Mann as principal and the defendant Great Amer-

ican Indemnity Company as surety, said bond covering the prompt payment of persons supplying labor and materials to Mann in the construction of the reservoir.

This suit was commenced on the payment bond in the United States District Court for the Eastern District of Oklahoma by the United States for the use and benefit of J. R. C. Moseley. Plaintiff, Moseley, contends that the defendant Mann is unconditionally liable for the rental or hire of certain earth moving equipment furnished by the plaintiff for use in carrying out the construction contract and that the defendant Great American Indemnity Company is liable to plaintiff upon the payment bond for the failure of Mann to pay the rentals or hire allegedly due. The earth moving equipment was furnished by Moseley to Mann under a bailment contract dated July 30, 1949. For the purpose of clarity, the bailment contract will be referred to as such throughout the following decision in order to distinguish it from the construction contract referred to above.

One Ernest Loyd has been brought into the suit as a third party defendant by the surety company as third party plaintiff. In order to establish Loyd's position in the controversy, it will be necessary to review the circumstances arising before and during the time all of the transactions took place.

As stated above, a contract was awarded by the United States Government to K. R. Mann for the construction of a reservoir near Duncan, Oklahoma, and the required payment bond was executed. At the time the construction contract was being negotiated Mann did not have access to sufficient monies necessary to finance the work. However, before bidding on the project, Mann had made tentative arrangements with a bank in Weatherford, Texas, to finance him in the undertaking. This tentative arrangement with the bank failed to materialize after the construction contract was awarded, and Mann was faced with the difficulty of carrying out the contract without adequate financial support.

It does not clearly appear from the evidence or testimony of the parties just when Mann and Moseley first discussed rental or hire of the equipment owned by Moseley. However, it was sometime during the negotiations for the construction contract that the two men met and considered the possibility of Mann's arranging for the rental of equipment for use on the reservoir project should Mann be successful in his bid for the construction contract. After the construction contract had been awarded to Mann, he and Moseley again met and discussed entering into a written contract for the rental of the earth moving equipment. Moseley at that time stated that a lawyer would be needed to draft the contract and suggested the name of a particular lawyer to do the drafting of the instrument which was to be patterned after a form used by the Euclid Road Machinery Company. Both parties were familiar with the Euclid form, but the bailment contract in question was drafted by the attorney suggested by Moseley.

Shortly after the bailment contract was completed, Mann contacted the bank at Weatherford and discovered that it no longer was interested in financing Mann. This information was conveyed to Moseley after further attempts had been made to find finances elsewhere. At this time Moseley suggested that Mann look into all available sources for money and that if there was no "luck", "we will contact old Ernest." It was at this juncture that Ernest Loyd entered into the transaction. Mr. Loyd was apparently a mutual friend of the two parties and after several conversations with them, he agreed to furnish the money to help them. Although Loyd was agreeable to financing the undertaking, he stated definitely that he did not want to lose any money. The agreement between Loyd, Mann and Moseley was that Loyd would meet the payrolls of Mann and pay all expenses incurred in carrying out the construction contract. For this Loyd was to receive absolutely no compensation, it being understood that it was purely a favor to Mann and Moseley.

The three parties then met in the office of the attorney who had drafted the bailment contract entered into previously by Mann and Moseley. At this meeting Loyd again stated that he did not want to lose any money. It was then suggested by

Moseley that interlineations be made in the bailment contract in order to assure Loyd that he would get his money back. The pertinent parts of the bailment contract are as follows: * * *

"J.R.C. Moseley, an individual, doing business as Brazos Valley Construction Company, * * * herein called Bailor, in consideration of the rents and hire herein agreed to be paid, and the covenants herein agreed to be kept, by K. W. Mann, herein sometimes called Bailee, * * * does hereby let and hire unto Bailee the following * * * 'property' to wit: * * * "For the possession and right to the use of the property during said term Bailor reserves and Bailee covenants that Bailee will pay to Bailor * * * rent or hire as follows:

"Rental at the rate of twelve (12¢) per yard for all of the earth to be placed in the embankment of the dam * * * and which amount of earth is estimated at 86,000 yards, such rental to be paid out of the estimate as received from the government by Bailee, under and by virtue of said contract for the doing of that work and shall be paid by Bailee as and at the time and out of such estimates when paid, and such rentals to be paid Bailor at the ~~First~~ *Ft. Worth* National Bank of ~~Weatherford~~, *Ft. Worth,* in ~~Weatherford~~, *Ft. Worth,* in ~~Parker~~ *Tarrant* County, Texas, *after any moneys advanced by Ernest Loyd for the execution & completion of said job has been repaid to Ernest Loyd.*

   "/S/ Ernest Loyd
    "J.R.C. Moseley
    "K. R. Mann"
     * * *

The italicized part of the contract was written into the contract in Moseley's handwriting, and Moseley chose the very words used.

With this bailment contract in force, the construction project was begun. As the work progressed, Loyd made out and paid the payrolls of Mann and advanced money for paying for other expenses incurred on the job. As the estimate checks were received from the Government, Mann turned them over to Loyd because the money that had been advanced by Loyd exceeded in every instance the amount that the estimate checks were for. Since Moseley was receiving no rent or hire because of the fact that Loyd was getting all of the returns to repay him for money furnished to carry out the construction project, he contacted Mann and asked him for some payment on the use of his equipment. The testimony does not show what reply Mann made to this request, but Moseley did not receive any rental. Moseley then notified the Great American Indemnity Company that he was asserting a claim for rental on equipment used by Mann on the construction project. As a result of this claim, the surety company then wrote a letter to Loyd as follows: "I represent Great American Indemnity Company, surety on bond of K. W. Mann, contractor on Prairie Dale dam sites 1 and 3, near Duncan, Oklahoma, invitation No. 887049, Soil Conservation Service. Said surety has been notified by J. R. C. Moseley, doing business as Valley Construction Company, through his attorneys, Messrs. McCall & McCall, Weatherford, Texas, that he asserts a claim for rental on equipment used by Mr. Mann in performing said contract, in the approximate amount of $11,016, and said Moseley has thus demanded payment by said surety of the amount of his claim, which is based upon twelve cents per yards for all earth moved and placed in the embankments of said dams. The surety has been informed that you have received payment of the progress estimates payable under the contract between Soil Conservation Service and Mann, and you are claiming the right to receive all further payments, including retainage due and to become due under said contract to reimburse you for moneys loaned said Mann. The surety hereby notifies you that all funds now or hereafter due and payable to Mann under his contract with the Soil Conservation Service constitutes a trust fund for its exoneration as surety for said Mann, and it will hold you strictly accountable in law and equity for any and all of said funds which you subsequently receive, not exceeding, of course, the amount necessary to exonerate it, as surety."

The partial payments made by the Government to Mann continued to be paid over

to Loyd as they were received. The final result was that after the construction had been completed and all money due to Mann from the Government had been paid and in turn given to Loyd, there were no funds left. The total amount received by Mann under the contract, all of which was turned over to Loyd, amounted to a little over $30,000. Loyd had furnished approximately $42,000 by paying for labor and materials which were expended on the construction project. A small part of the money advanced by Loyd was not actually expended for the construction project, but this amount was negligible compared to that part which was directly used for the project, and for all intents and purposes the entire sum advanced was for the work done. Thus in the final analysis the entire undertaking was unprofitable for all parties. Loyd paid for all labor and materials and in turn received much less than the amount he had advanced; Moseley received nothing because all the funds were depleted upon the payment of the estimates to Loyd; and Mann realized absolutely no profit on his construction contract.

A number of legal points have been raised by the various parties, but the bailment contract as construed by the court makes it unnecessary to consider most of them. Therefore the court confines its ruling to the principles of law involved in the construction of the bailment contract.

Plaintiff has ably presented his case and strongly contends that the bailment contract correctly interpreted was an unconditional promise to pay on the part of Mann. Plaintiff also contends that the contract merely set the time of payment and that there would be no reason for limiting the obligation of Mann to pay in light of the required payment bond and subsequent liability of the surety in case of failure of Mann to pay. He has especially urged that the intent of the parties as evidenced by their discussions before the bailment contract was entered into should be considered. All of these contentions are undoubtedly sound when properly applied, but the bailment contract is before the court for interpretation, and it is specifically admitted by the plaintiff in his testimony that the bailment contract is the sole agreement between himself, Mann and Loyd.

The court should and will look to the intent of the parties or admit oral evidence to show what the intent of the parties was in case of an ambiguous contract. West v. Anderson, 171 Okl. 165, 42 P.2d 543. Stating the principle another way, the mutual intent of the parties should be ascertained and given effect *if* it can be done without doing violence to the language employed. Victory Inv. Corporation v. Muskogee Electric Traction Co., 10 Cir., 150 F. 2d 889, 161 A.L.R. 1436. If the contract is unambiguous then the intent of the parties cannot be shown to change it. Strange v. Hicks, 78 Okl. 1, 188 P. 347; Beck v. Traders & General Ins. Co., 182 Okl. 251, 77 P. 2d 109; Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504.

It is not disputed by the plaintiff that a party may contract to look for payment from a particular fund. This rule was concisely stated in Keller v. Cohen, 224 Pa. 434, 73 A. 918, as follows: "it is competent for parties to contract for the payment of an obligation out of a particular fund and in a particular manner." The Keller case was cited with approval in West v. Anderson, supra, and is supported by numerous other authority. 17 C.J.S., Contracts, § 456d, and cases cited therein. Let us then look to the contract. By the applicable terms of the bailment contract it is stated that: " * * Bailee covenants that Bailee will pay * * as follows:

"Rental at the rate of twelve (12¢) per yard * * * such rental to be paid *out of the estimate* as received from the government by Bailee, under and by virtue of said contract for the doing of that work and shall be paid by Bailee, *as and at the time and out of such estimates* when paid * *." (Emphasis added.)

The terms of the bailment contract are very clear and unambiguous. Not only is the time for payment set out, but more particularly the fund from which payment is to be made is set out and even repeated within the same paragraph. This was the wording of the contract before the inter-

lineations were made. The interlineations added the following: ",after any moneys advanced by Ernest Loyd for the execution & completion of said job has been repaid to Ernest Loyd." This last clause modifies the foregoing part and clearly imparts the idea that Moseley will look to the fund only after Loyd receives his money. In this respect see 2 C.J.S., page 1009, where it is stated, defining the term "after": "The term does not always designate the time at which one thing is to be done in reference to something else, but it may express the relative priority and subordination of one claim to another in matter of right, and in this sense, the word has been defined as subject to."

It should be noted at this point that it was the plaintiff who suggested and personally wrote the very words used in the interlineation. He was undoubtedly anxious to rent his idle equipment and was instrumental in obtaining the services of Loyd as a financier for Mann. For this he should not be criticized, but it was the plaintiff himself who gave up his right under the contract to have priority in the funds from which he was to seek payment. It is reasonable to assume that plaintiff did not intend to look solely to this particular fund for his payment of rental. Although this may be true, still the court is bound by the contract as the parties make it. 17 C.J.S., Contracts, § 296. The bailment contract is free from ambiguity, and plaintiff has contracted to look to the estimates for his payment but only after Loyd has been paid. Since the particular funds have been completely and rightfully paid to Loyd, plaintiff has no remedy but to suffer the written terms of the contract.

It is the finding of the court that Mann is not liable to Moseley under the terms of the bailment contract, and it necessarily follows that the surety is not therefore liable to Moseley. This effectively disposes of the controversy between the third party plaintiff and the third party defendant, although the court does add by way of dictum that under the circumstances, and assuming that Mann was unconditionally liable, Loyd would not be liable to the surety for it is undisputed that the vast majority of the money furnished by Loyd was expended for the payment of labor and material for the construction project and the surety's rights were in no way impaired by Loyd's receiving the estimate checks.

Counsel are directed to submit a journal entry in conformity with this opinion within fifteen days from this date.