Yadusky et al. *v.* Shugars et al., Appellants.

Argued December 1, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Charles E. Berger,* with him *Arthur L. Shay,* for appellants.—The leading purpose of construing any con-

tract is to ascertain the intention of the parties from the language employed, taking into consideration the nature and situation of the subject-matter and the apparent purpose or object of the contracting parties: Wilson v. Wernwag, 217 Pa. 82, 87; Bangor P. Slate Co. v. Slate Co., 270 Pa. 161, 165.

The covenants upon which the appellees rely for recovery are the mere personal covenants of the appellants' decedent. They run neither with the stock nor with the real estate owned by the brewing company: Orth v. Gas Co., 280 Pa. 118.

The owners of all the capital stock of the Liberty Brewing Company were the owners of its property, and, in the absence of proof of its market value when the federal taxes were paid the actual value of the corporate stock was the value of the corporate property: Jarvis, Trustee, v. Bell, 296 Pa. 568.

We contend that no final assessment of taxes due to the federal government which the appellants paid for the Liberty Brewing Company was ever made against it so far as the evidence shows.

*H. O. Bechtel* and *B. V. O'Hare,* for appellees, cited: Bensinger v. School Dist., 56 Pa. Superior Ct. 226; Baum v. Tonkin, 110 Pa. 569; Myers v. Brodbeck, 110 Pa. 198.

OPINION BY MR. JUSTICE SCHAFFER, January 5, 1932:

This is an action of assumpsit brought by plaintiffs to recover from the estate of William B. Shugars, deceased, the amount of certain federal income taxes which were assessed against the Liberty Brewing Company and which plaintiffs or the corporation were required to pay. After a trial in the court below and verdict and judgment in plaintiffs' favor, defendant administrators took this appeal.

On October 15, 1920, Shugars and others, owners of all of the capital stock of the Liberty Brewing Company,

by agreement in writing sold 395 shares of it to plaintiffs and the remaining 100 shares to the Liberty Brewing Company itself. The full consideration due to the vendors has been paid.

The agreement contained the following clauses: "The parties of the first part [the sellers] agree that other than the first mortgage now owned by the Miners Realty Co., and the second mortgage bonds outstanding there are no debts owing by the Liberty Brewing Co., and if any other debts be found that have been incurred by the Liberty Brewing Co. prior to October 10, 1920, that they the parties of the first part agree to pay the same and be personally liable for the same. The parties of the first part agree that they are and will be personally liable for all things done in connection with the operation or management of the business of the Liberty Brewing Co., prior to the date of this agreement."

On October 24, 1924, the brewing company received notice from the treasury department in Washington that an audit of its income tax returns and of its books of account had disclosed a deficiency in tax of $21,541.25, of which $17,250 was for the fiscal year ending October 31, 1919. This sum the plaintiffs and the brewing company were compelled to pay and in this action recovery of that amount is sought from the estate of Shugars under the provisions of the agreement above quoted between him and plaintiffs. We held on a prior appeal, Yadusky v. Shugars, 301 Pa. 99, that the action might be maintained against the estate of Shugars alone, since the obligation is several as well as joint.

A number of questions are raised by appellants. They need not be discussed seriatim for the reason that, in our opinion, under the plain language and manifest intent of the agreement, plaintiffs are entitled to recover. It is apparent from the writing that plaintiffs in purchasing the stock were to get it clear of any charge against the company except the first and second mortgages. The contract says the sellers agree that with these two ex-

ceptions there are no debts owing by the company, and if any other debts be found which have been incurred by it, they agree to pay them and to be personally liable therefor. They also agree to be personally liable for all things done in connection with the operation or management of the business of the company prior to the date of the agreement. It would be too narrow a construction of this undertaking, having in view the intention of the parties which it discloses, to hold, as appellants would have us, that the word debts does not comprehend taxes within the terms of this agreement. Even granting that the contract is one of indemnity, as appellants argue, which is certainly open to debate, it is the direct undertaking of the sellers of the stock to pay liabilities which should thereafter appear to have been owing by the company. It may be true, as appellants urge upon us, that the term "debts" in its technical sense is not ordinarily understood to embrace an obligation in the nature of a tax. Yet it is equally clear that the purpose of this agreement was to make certain what the plaintiffs were buying and to render them, so far as possible, safe from undisclosed obligations and liabilities of the corporation. Nor are authorities lacking in support of our construction of the term "debts" where agreements of this character are involved. Morrow v. Hays, 226 Mich. 301, presents facts almost exactly similar to the case at bar. There the defendants, who owned the entire capital stock of a corporation, sold the stock to plaintiffs under an agreement covenanting that at the date of sale there were no valid and legal debts against the corporation, except (as in our case) certain stated obligations, and agreed to hold the purchasers harmless against any and all "legal indebtedness" against it except those named. Subsequent to the transfer of the stock the plaintiffs were notified by the federal government that there was due from the corporation an income and excess profits tax liability for a year prior to the sale. Plaintiffs paid the tax in full, together with the accrued penalty, and

sued the vendors of the stock to recover the sum paid. The Supreme Court of Michigan, in affirming a judgment for the full amount, held that the tax liability was embraced within the meaning of debt as used in the agreement. To the same effect is the decision in Jones v. Heinzle, 130 N. E. Rep. 815, by the Appellate Court of Indiana; and it is interesting to note that in this case, as in the one at bar, recovery was allowed even though no assessment of the tax had been made at the time the sale was completed, on the theory that the debt arose through the existence of the statute, and assessment is unnecessary to create the obligation. See Dollar Savings Bank v. United States, 19 Wall. 227, 240, and United States v. Chamberlin, 219 U. S. 250, 263. Finally, in Dingle v. Camp, 121 Wash. 393, the court held, in construing just such an agreement as now before us, that unpaid income taxes for previous years are a debt within the terms of the contract.

If the provision as to payment of debts was in any degree doubtful, or if there were any question in our minds that in contemplation of the parties the term debts included recoverable liabilities of the company, this doubt would be set at rest by the further provision that the sellers are personally liable for all things done in connection with the operation or management of the company prior to the date of the agreement. In the management of the company before that time an income tax return had been made to the federal government which did not disclose the full amount due. As to this the vendors had agreed by the language they used that they would be personally liable for its correctness as something done in the management of the company. As the manifest purpose of the agreement was to secure to the purchasers the value of the stock which they were buying and as the necessary effect of the levying of the additional tax was to reduce its value, these taxes were among the possible obligations against which the sellers were safeguarding the buyers. The vendors were re-

sponsible for the income tax return as it was made and they cannot escape responsibility to plaintiffs for what it failed to disclose under a narrow construction of the agreement which would not include taxes justly due and properly payable under the designation of debts.

We cannot adopt the idea of appellants that the measure of plaintiffs' recovery is the difference between the value of the stock held by them immediately before the assessment of the taxes and its value immediately afterwards, because that is not what the agreement provides. It stipulates that the sellers will pay the debts and be personally liable for the same.

The judgment is affirmed.