104 N.J. Super. 280 (1969)
249 A.2d 639
ESSEX COUNTY WELFARE BOARD, A CORPORATE ENTITY OF NEW JERSEY, PLAINTIFF,
v.
DORIS PHILPOTT, WILLIAM WILKES, AND FIDELITY UNION TRUST COMPANY, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided January 20, 1969.
*281 Mr. Felix A. Martino for plaintiff (Mr. John A. Matthews, Jr., attorney).
Mr. George Charles Bruno, of the District of Columbia Bar, appearing pro hac vice, for defendants, Doris Philpott and William Wilkes (Mr. Michael P. Ambrosio, Newark Legal Services Project, attorney).
LARNER, J.S.C.
This matter came before the court on an order to show cause why a judgment should not be entered *282 in favor of plaintiff Essex County Welfare Board (board) directing the Fidelity Union Trust Company to turn over to it moneys on deposit in the bank in the name of Doris Philpott. To eliminate procedural pitfalls, the parties submitted a stipulation of facts and consented that the court determine the matter as if on final hearing based upon those facts.
On August 2, 1966 defendant Wilkes, applied to the Essex County Welfare Board for financial assistance under the state program for total disability assistance. N.J.S.A. 44:7-38 et seq. As a condition for said assistance defendant executed a reimbursement agreement in accordance with the provisions of N.J.S.A. 44:7-14 whereby he promised to reimburse the board for all advances made to him and agreed that the filing of the reimbursement agreement would have the same force and effect as a judgment. The agreement and the statute also provide that defendant pledges as security for such reimbursement all of his real and personal property. N.J.S.A. 44:7-14.
Wilkes was then referred by the board to the federal Social Security Administration to apply for disability insurance benefits under 42 U.S.C., c. 7. As a result he received a check on August 20, 1968 from the Social Security Administration in the sum of $1,864.20 as a retroactive award for disability benefits. By that time the board had advanced to defendant the total sum of $2,082.
Upon receipt of the Social Security check Wilkes deposited the same in the Fidelity Union Trust Company in an account in the name of defendant Doris Philpott. He admits, however, that the money is held in trust for him and that she has no proprietary interest in the account. Plaintiff seeks reimbursement from the moneys on deposit in the bank.
Wilkes contends that plaintiff is not entitled to reimbursement from this fund for several reasons, basing his argument mainly on the following: the federal statute underlying the Social Security payment, 42 U.S.C., § 407, 49 Stat. 624 *283 (1939), prohibits transfer or assignment of any future payments under the act and provides that none of the monies paid or payable are subject to execution, levy, attachment, garnishment or other legal process, and (2) the Congressional policy underlying the Social Security program preempts invasion of its benefits by all creditors of the recipient, including the Essex County Welfare Board, despite the reimbursement provisions of the agreement and the applicable New Jersey statutes. In addition, defendant attacked the validity of the required reimbursement agreement on constitutional grounds, but the recent United States Supreme Court opinion of Snell v. Wyman, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511, January 13, 1969, affirming 281 F. Supp. 853 (S.D.N.Y. 1968), is dispositive of this issue contrary to defendant's position.
The pertinent federal statute, 42 U.S.C., § 407, reads:
"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."
The act covers two sets of circumstances. It prohibits the transfer or assignment of any future payments thereunder and exempts the moneys "paid or payable" from reach of creditors through legal process. If plaintiff were an ordinary creditor seeking to levy on the lump sum fund received from the Social Security Administration, the statute by its terms would bar such process. The fund would be exempt from creditors even though its form had been converted from a check payable to defendant to a bank account belonging to him. See Lawrence v. Shaw, 300 U.S. 245, 250, 57 S.Ct. 443, 81 L.Ed. 623 (1937), and Porter v. Aetna Casualty & Surety Co., 370 U.S. 159, 162, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962), as to parallel construction of Veterans Administration Act.
*284 The intent of Congress is clear, namely, to protect the recipient from the attack of creditors before and after the moneys are paid, and to permit him or his dependents to obtain the necessities of life. As long as the fund is not converted to a permanent investment, its mere deposit in a bank for use by the recipient does not expose it to attachment or levy by creditors. Lawrence, supra; Porter, supra; Century Indemnity v. Mead, 121 Vt. 434, 159 A.2d 325, 328 (Vt. Sup. Ct. 1960). Cf. Carrier v. Bryant, 306 U.S. 545, 59 S.Ct. 707, 83 L.Ed. 976 (1939).
Hence, the remaining issue is whether the welfare board is in the category of a creditor so as to be deprived of reimbursement from the federal funds. A perusal of Title 44 of the New Jersey Revised Statutes, and particularly N.J.S.A. 44:7-14, leads to the conclusion that moneys paid by county welfare boards are loans or advances and are not outright gifts to the poor. The Legislature determined as a matter of policy that such welfare payments may only be made upon condition that the recipient execute a reimbursement agreement. In many cases, of course, these agreements do not serve any practical purpose because of the absence of assets on the part of most recipients. Nevertheless, the ability to recoup money in some instances serves the social purpose of adding those moneys to the totality of the funds available for assistance to the needy. Such a legislative purpose is laudable and serves the welfare of the greatest number of indigents in the community.
In any event, as a result of the reimbursement agreement and the underlying statute, the county welfare board became a creditor of Wilkes to the extent of the moneys advanced under the program. As such a creditor, it would be subject to the limitations placed upon creditors by the foregoing exemption in the federal statute in the absence of any countervailing provision or policy. And since the New Jersey statute granting reimbursement to county welfare boards is in real conflict with the federal statute, it must yield thereto *285 so as to afford exemption of the Social Security benefits. U.S. Const., Art. VI, cl. 2; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942); Hill v. State of Florida ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945).
The board contends, however, that it is in a unique position and that its status is outside the scope of the class of creditors contemplated by Congress in adopting 42 U.S.C., § 407. It bases its contention on a dichotomy between "voluntary" and "involuntary" creditors, as articulated by the Court of Appeals of the District of Columbia Circuit in Savoid v. District of Columbia, 110 U.S. App. D.C. 39, 288 F.2d 851 (1964), when dealing with a similar exemption provision in the Veterans Administration Act. The court in that case held that the District of Columbia was not barred by the exemption statute from recovery by way of reimbursement from Veterans Administration benefits paid to an incompetent and in the hands of his representative. The court concluded that the District as a governmental instrumentality was not a "voluntary" creditor in the ordinary sense and was therefore not within the class of creditors contemplated by Congress in the exemption provision of the statute. By this distinction, the court undoubtedly meant that inasmuch as the hospital was governmentally owned and the veteran was committed there by court order, the District of Columbia did not voluntarily extend its facilities and services to the veteran. However, the opinion lacks any rationale underlying the created dichotomy beyond the statement of the judicial conclusion.
Similar results were reached in unreported decisions by the Federal District Court of New Jersey with regard to veterans' insurance proceeds, and by the Law Division of the Superior Court of New Jersey in a case involving Social Security benefits. Unfortunately, these opinions also do not attempt to express the basis for the distinction beyond the statement of the conclusion itself, namely, that the public *286 body was not a creditor within the contemplation of Congress in the applicable statute. See also to same effect: State v. Bean, 159 Me. 455, 195 A.2d 68 (Me. Sup. Jud. Ct. 1963); In re Bemowski's Guardianship, 3 Wis.2d 133, 88 N.W.2d 22 (Wis. Sup. Ct. 1958); Dept. of Public Welfare v. Sevcik, 18 Ill.2d 449, 164 N.E.2d 10 (Ill. Sup. Ct. 1960).
In Pennsylvania, recovery was denied the Commonwealth by a trial court in a veteran's pension case because of the effect of the exemption provision, even though the claimant was the state. Dilijonas Estate, 16 Pa. Dist. & C.O.R.2d 142 (Orph. Ct. 1958). Cf. Ace Estate, 24 Pa. Dist. & C.O.R.2d 534 (Orph. Ct. 1960). But see other Pennsylvania trial court decisions: Commonwealth v. Thompson, 22 Pa. Dist. & C.O.R.2d 236 (C.P. 1960); Commonwealth v. Garlick, 26 Pa. Dist. & C.O.R.2d 389 (C.P. 1961); Klaric Petition, 27 Pa. Dist. & C.O.R.2d 93 (Orph. Ct. 1961).
There is, then, no precedent in any reported opinion on this question which is controlling on this court. And the opinions which have refused to enforce the exemption provision of the federal statute are hardly persuasive.
In Thiel v. Thiel, 41 N.J. 446 (1964), plaintiff sought to reach pension funds due her husband from his employer in satisfaction of a support order for herself and her children. The pension agreement underlying the payment of the funds to the employee contained a restrictive provision that no "pension or payment on account of any pension [shall] be subject to attachment, execution or other legal process against the PENSIONER." 41 N.J., at p. 449 the husband contended that this provision immunized the fund from garnishment by his wife. The Supreme Court held that the limitation in the pension agreement did not apply to a wife seeking to reach the pension funds for support for herself and her children. Justice Schettino supported this conclusion on the basis of the following reasoning:
"Regardless of the precise and restrictive wording of an exemption provision, the restraint created should not be a barrier against recourse to the fund when it provides the only reasonably accessible asset *287 for support of the wife within her state of residence. Cf. Schlaefer v. Schlaefer, 71 App. D.C. 350, 112 F.2d 177, 130 A.L.R. 1014 (1940). The purpose of exemptions is to relieve the person exempted from the pressure of claims hostile not only to his own essential needs but also to those of his dependents. But the purpose cannot be one of relieving him of familial obligations, perhaps destroying what may be the family's last and only security, short of public relief. The husband's duty is to share his pension benefits with his wife, and the courts of the state of her residence, if they have jurisdiction over the fund, ought to enforce that duty when there is no other reasonably practical means of obtaining support open to her within the state. Moreover, if we were to uphold his claim of exemption, we would `feed the husband and starve the wife.' Wetmore v. Wetmore, 149 N.Y. 520, 529, 44 N.E. 169, 171, 33 L.R.A. 708 (Ct. App. 1896)." (at p. 451)
The same philosophy was applied in a marital situation involving a statutory exemption of a public employee's pension in Fischer v. Fischer, 13 N.J. 162 (1953).
These cases rejecting the immunity provision of a statute or contract when the claim is made by members of the recipient's family for support are based upon the reasoning that the funds available to the husband were intended not only for his benefit but also for the benefit of his family at a time when his earning power has been reduced or terminated. They are based upon the special circumstance that the claimants seeking to reach the fund are identified with the beneficiary himself, and that the pension in itself was always intended to protect not only the husband but his family as well. Because of this underlying purpose of the pension funds, the courts have refused to enforce the literal words of the exemption provision so as to deprive the family of a means of support and subject its members to the need for public relief.
This line of cases is not apposite to the circumstances involved herein. The welfare board is not an intended beneficiary, directly or indirectly, of the funds generated by the legislative policy underlying the Social Security legislation. It is a third party who asserts a claim against that fund because of its statutory and contractual position as a creditor. It is not identified with the recipient of the fund, as is a wife *288 or children, and it has no paramount right which transcends the expressed policy of the Federal Government in creating the Social Security Administration. It does not stand in such a position as to impel a court to disregard the clear language of the statute and impose an exception in its favor.
Although the claim of the Essex County Welfare Board serves a valid social purpose in enforcing the policy of repayment espoused by the New Jersey Legislature, I am unable to find in the federal statute or the cases interpreting the same any sound basis for concluding that the board is not a creditor subject to the same limitation as other creditors. The distinction made by other courts between "voluntary" and "involuntary" creditors is an artificial one which has no support in the pertinent legislation. There would appear to be no logical basis for treating the board any differently from any other person or organization who advanced moneys to the indigent individual for his personal needs.
As observed by Judge Jayne in Middlesex County Welfare Board v. Motolinsky, 134 N.J. Eq. 323 (Ch. 1944), in considering the right of a welfare board to reimbursement from the proceeds of a life insurance policy:
"The complainant as a municipal body cannot be distinguished from the creditors comprehended by the statute. Equity cannot fashion exceptions which circumvent a statute obviously intended to encircle the rights of all creditors." (at p. 331)
If a relative or a neighborhood grocer or a charitable institution who advanced funds or credit for the maintenance and support of an individual would be barred from recovery out of the federal funds, why should a welfare board be in any better position? The mere coincidence that the claimant is a public body cannot dictate a contrary result. In the absence of any exception in the statute demonstrating such an intent, the will of Congress must be enforced.
Judgment will be entered in favor of defendant without costs.