ESSEX COUNTY WELFARE BOARD, A CORPORATE ENTITY
OF THE STATE OF NEW JERSEY, PLAINTIFF-APPEL-
LANT, v. DORIS PHILPOTT, WILLIAM WILKES AND
FIDELITY UNION TRUST COMPANY, DEFENDANTS-RE-
SPONDENTS.

Argued December 21, 1970—Decided July 12, 1971.

*Mr. Ronald Reichstein* argued the cause for plaintiff-appellant (*Mr. John A. Matthews, Jr.*, attorney; *Mr. Reichstein*, on the brief).

*Mr. George Bruno*, of the Newark Legal Services Project, argued the cause for defendants-respondents Doris Philpott and William Wilkes (*Mr. Richard N. Tilton*, of the Newark Legal Services Project, of counsel).

No appearance entered or brief filed on behalf of defendant-respondent Fidelity Union Trust Company.

The opinion of the Court was delivered by

HALL, J. The question in this case is whether a state welfare agency, which had advanced monthly disability assistance to a person under *N. J. S. A.* 44:7–38 to –42, may recoup, out of a subsequent, retroactive, lump sum federal social security disability insurance benefits payment to him, an amount representing the duplication of benefits thereby received.

The federal payment in the sum of $1864.20 to defendant Wilkes, the recipient of both sets of benefits, was de-

posited and constitutes the balance in a bank account under the name of defendant Philpott (as a matter of convenience only and concededly held in trust for Wilkes) in defendant Fidelity Union Trust Company.[1] The state agency, plaintiff Essex County Welfare Board, brought suit in the Essex County Court to reach the bank account for reimbursement from the duplicated federal payments.[2] On the return of defendant's motion for summary judgment, it was agreed that the trial court would determine the matter without a jury on a stipulation of facts as if on final hearing. The sparse stipulation[3] was designed to present to the court only the basic legal question of whether plaintiff is barred from recovering any amount from the account by reason of a provision of the federal social security law, 42 *U. S. C.* § 407, which reads:

The right of any person to any future payment under this sub-chapter [Subchapter II — Federal Old-Age, Survivors, and Disability Insurance Benefits — of Chapter 7 — Social Security — of Title 42 — Public Health and Welfare — of the United States Code]

---

[1] The bank was made a defendant in order to restrain withdrawals pending the litigation and has taken no part in the suit. Interim relief to that effect was allowed and the account balance is held in escrow pending the outcome of the action.

Since Wilkes is the only real party in interest, "defendant" will hereafter refer to him alone.

[2] Although plaintiff's complaint and the stipulation of facts, if read literally, give the impression that it claims a right to the whole amount of the lump sum social security payment, we understand that it quite properly asserts only a right to recoup admittedly overlapping payments to the extent of the amount of the federal benefits, as if they had been paid monthly during the duplicated period.

[3] The stipulation has been supplemented by additional information furnished by the parties (chiefly relating to the periods and amounts of benefits received from each source) during and after appellate arguments. Unfortunately this supplemental fiscal information is not in entire agreement, so we are unable to speak definitively of the precise total and period of the overlap and the exact relation of that amount to the sum on deposit in the bank account. Later references to this aspect of the case are to be read accordingly.

shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

The trial court held, 104 *N. J. Super.* 280 (Co. Ct. 1969), that plaintiff was barred from any recoupment as a matter of law by reason of a literal reading of section 407 regardless of the policies and equities involved. The Appellate Division affirmed "essentially for the reasons expressed" in the trial court opinion. 109 *N. J. Super.* 48 (1970). We granted plaintiff's petition for certification. 56 *N. J.* 480 (1970).

In August 1966 defendant applied to plaintiff[4] for benefits under the state program of assistance, provided for by *N. J. S. A.* 44:7–38 to –42 and administered by the county welfare boards, to any needy person who has attained the age of 18 but is less than 65 years of age and is permanently and totally disabled by reason of any physical or mental defect, disease or impairment other than blindness.

*N. J. S. A.* 44:7–39 prescribes that the assistance to be extended under this program shall in all other respects be governed by the provisions of the statutory sections dealing with old age assistance; *i. e.* assistance to persons who have attained the age of 65 years who lack adequate support, are unable to support themselves and are without relatives or other persons able or willing to support them. See *N. J. S. A.* 44:7–5. Defendant met all pertinent eligibility requirements.

Assistance to the aged needy, and so to the permanently and totally disabled as well, is granted solely on the basis of and only to the extent of need. *N. J. S. A.* 44:7–12 states that the county welfare board shall extend, to eligible per-

---

[4]The application appears actually to have been a reapplication or a request for reopening defendant's case. He had previously received state disability assistance, which was terminated in 1965 because he was a patient in a county sanitarium. See *N. J. S. A.* 44:7–39(1).

sons, assistance "adequate to provide for their reasonable maintenance and well-being * * * with due regard to the conditions existing in each case, in accordance with the rules and regulations" of the state Division of Public Welfare in the Department of Institutions and Agencies. See also *N. J. S. A.* 44:7–6. This requires a determination by the board of the amount needed by the particular eligible applicant to reasonably maintain himself, which is commonly referred to as the individual's budget. See New Jersey Categorical Assistance Budget Manual, § 608, "Budgeting Procedures." It further requires that, in fixing the dollar sum of assistance to be extended to him, allowance must be made for any actual (see New Jersey Categorical Assistance Budget Manual, § 402, "Available Resources"), but not potential (see New Jersey Categorical Assistance Budget Manual, § 407, "Potential Resources"), income from other sources received by him. The assistance then advanced is the difference between the budget and such income. See New Jersey Categorical Assistance Budget Manual, §§ 401.1 to 401.7, "Resources — General Considerations." See also *N. J. S. A.* 44:7–5(e). Once that figure is determined, the direction to pay it is mandatory, subject to future adjustment depending on changing circumstances. In this case plaintiff fixed defendant's need at $108 per month, with no offsetting other income. While we are not certain from the information furnished exactly when assistance payments in this amount were commenced or exactly how long they continued, it is apparent that they were made at least as of January 1, 1967 and continued until some month in the middle of 1968.

█ Such old age and disability assistance is not an outright grant or gift to the recipient, but only an "advance" subject to repayment. Thus *N. J. S. A.* 44:7–14 provides:

(a) Every county welfare board shall require, as a condition to granting assistance in any case, that all or any part of the property, either real or personal, of a person applying for old age assistance be pledged to said county welfare board as a guaranty for the re-

imbursement of the funds so granted as old age assistance pursuant to the provisions of this chapter. The county welfare board shall take from each applicant a properly acknowledged agreement to reimburse for all advances granted, and pursuant to such agreement said applicant shall assign to the welfare board, as collateral security for such advances, all or any part of his personal property as the board shall specify.

See also New Jersey Division of Public Welfare, Manual of Administration § 2272, which details the mechanics of the reimbursement requirement. The section, along with *N. J. S. A.* 44:7–15, also provides that the filing of a notice of such agreement with the county recording office has the same force and effect as a judgment of the County Court, law division. The obvious purpose is to enable the board to obtain reimbursement for assistance advanced out of subsequently discovered or acquired real and personal property of the recipient. Defendant gave plaintiff such an agreement to reimburse under date of September 13, 1966.

At the time of defendant's application for state disability assistance, plaintiff obviously believed defendant was entitled to federal disability insurance benefits under the social security act and, according to the stipulation of facts, referred him to the Social Security Administration for the purpose of filing for such benefits. The record does not show either the date of such referral or the date of filing of the application. The exact situation is confusing because defendant had previously been receiving such federal benefits probably until May 1966. It is not clear why they ceased at that date. In any event, on August 20, 1968 he received from the Social Security Administration a check in the amount of $1864.20 (of which plaintiff promptly learned) representing retroactive social security disability insurance benefits, apparently for the period from May 1966 through January 1968 at the rate of $69.60 monthly and from February 1968 through June or July 1968 at a $78.70 monthly rate. There is no clear explanation for the delay in payment. Thus, at least from January 1967 through June or July 1968, defendant received the full amount of state

disability assistance plus the monthly social security disability insurance benefits, although the latter was received in a lump sum and not each month during the period.[5] It further consequently appears that the check covered federal benefits for a period (seemingly from May 1966 to January 1967) when defendant received no state assistance. This check was deposited in and constitutes the amount of the bank account previously referred to, which the lower tribunals held plaintiff could not reach by reason of 42 *U. S. C.* § 407.

Federal social security disability insurance benefits stand on quite a different basis than state disability assistance. They are one item of the social security benefits system, created, along with old-age and survivors benefits, in subchapter II of Chapter 7 (Social Security) of Title 42 (Public Health and Welfare) of the United States Code. 42 *U. S. C.* §§ 401–429. Disability benefits are specifically provided for in 42 *U. S. C.* § 423. Simplistically summarized, they represent outright grants, not subject to reimbursement, payable monthly, to all eligible persons (the eligibility requirements as far as age and disability are concerned are substantially the same as those for state disability assistance) at a rate computed in accordance with a general mathematical formula. As contrasted with state assistance, they are not based on and have no relation to the particular individual's need from the standpoint of the sum he requires for his reasonable maintenance. Both benefits are designed, of course, for the same

---

[5] We understand defendant has been, since the time of the check, receiving monthly social security benefits regularly. When plaintiff learned of the retroactive check and the periodic payment of such benefits thereafter, it reduced his monthly disability assistance to the difference between the federal payment and his budget figure. The exact date of such reduction is not clear. Sometime in 1970 plaintiff learned defendant was also receiving $92 per month from the Veterans Administration. The total of this figure and the social security payment exceeded defendant's budget, so plaintiff ceased making any state assistance payment to him.

general purpose — to furnish support to an individual, the federal to the extent allowed by the formula and the state to the full extent of his need as determined by his budget.

The answer to the question posed at the outset of this opinion depends upon whether Congress intended 42 *U. S. C.* § 407 to apply to the factual situation before us. Of fundamental importance in this connection is the interdependence and very close relationship between the state and federal disability programs. The primary point is that one-half of the funds for assistance under the state program, as well as a larger percentage of state administrative costs, are furnished by the federal government (the balance coming from state sources) by way of grants to the states. 42 *U. S. C.* §§ 1351–1355.

In order to obtain the federal contribution, the state plan for use of the money for the permanently and totally disabled must be approved by the federal authorities pursuant to standards and directions specified by them. See 42 *U. S. C.* § 1352. In other words, state assistance must be basically administered according to federal requirements.[6] The federal statute, 42 *U. S. C.* § 1352(a)(8), for example, requires the state agency, in determining need, to take into consideration any other income and resources of those claiming disability aid, subject to some exceptions not here pertinent. See Circular Letters Nos. 325 (June 1, 1967) and 800 (May 26, 1970), Division of Public Welfare, New Jersey Department of Institutions and Agencies.

Of even greater significance is the fact that the state, upon recovery of any amount by way of reimbursement, must account to the federal government for the latter's share in the

---

[6]Our statutes contain a reciprocal provision, *N. J. S. A.* 44:7–42, directing the Commissioner of Institutions and Agencies "to issue all necessary rules and regulations and administrative orders and to do all other acts and things necessary to secure for the State of New Jersey the maximum Federal financial participation that is available with respect to a plan of assistance for the permanently and totally disabled. * * *"

same proportion as it was contributed. Federal Department of Health, Education and Welfare, Handbook of Public Administration: Part V, Fiscal Operations and Accountability, Accountability for Federal Funds Advanced, §§ 3340–3344 (1951). *N. J. S. A.* 44:7–15; New Jersey Department of Institutions and Agencies: Part V, State Plan for OAA, APTD and ADC Programs, Computation of federal, state and local share of funds collected or recovered, at 12–15. The federal government, therefore, has a very substantial stake in this suit.

In sum, the scheme is a predominantly federal program for assistance to needy disabled persons, with the federal social security insurance benefits payable without regard to need, and a state program of advancements supplementary thereto, under federal requirements and with federal contribution, to bring support to such persons up to the amount required for their reasonable maintenance, but subject to repayment.

In view of the entire scheme, it is unquestioned that, if an applicant for state disability assistance was at the time receiving monthly federal disability insurance benefits, the amount of the latter would have to be deducted from his budget to arrive at the amount of state assistance. Indeed, defendant concedes that such would have been required here had he received each month's portion of the lump sum federal payment contemporaneously with the state assistance advances. Realistically, what took place was to advance to defendant state disability assistance to the full amount of his budget until monthly federal payments began, so that he would, during the interim, have available the entire sum required for his living needs. Thus the funds plaintiff seeks to reach are accrued moneys, not current benefits necessary for defendant's present support and maintenance. It seeks reimbursement, in accordance with defendant's reimbursement agreement, for support it actually furnished when he needed it to the extent it would have been federally supplied if the monthly federal benefits had begun immediately. The equities are all with plaintiff.

██ We cannot agree with defendant's contention and the view of the lower tribunals that 42 *U. S. C.* § 407 bars plaintiff simply because the federal payments were made retroactively in a lump sum. We are convinced that the section was never intended to bar the government from recoupment in such a situation. Not only is defendant's argument contrary to the policies of the overall federal-state benefits scheme, but it runs counter to the rationale of another section of the social security act, 42 *U. S. C.* § 404. That section, in case of overpayment, directs the federal authorities to "require such overpaid person or his estate to refund the amount in excess of the correct amount. * * *" (subject to certain qualifications not of significance here). 42 *U. S. C.* § 404(a)(1). There is no suggestion that this may not be accomplished by recovery out of the very benefits paid and is a clear indication to us that section 407 was not intended to bar the federal government in such a case. It should follow, therefore, that neither was the section intended to bar the state from seeking reimbursement, on behalf of the federal government as well as itself, to the extent of the overlapping federal payments.[7]

From the standpoint of precedent, the only cases we have discovered dealing with the precise situation here involved, *i. e.* payment of full state assistance, with an agreement to reimburse, pending the receipt of social security benefits, are three reported trial court decisions in Pennsylvania. *Commonwealth v. Thompson,* 22 *Pa. Dist. & Co. R. 2d* 236 (Lancaster Co. Ct. 1960) ; *Commonwealth v. Garlick,* 26 *Pa. Dist. & Co. R. 2d* 389 (Mercer Co. Ct. 1961) ; *Klaric Petition,* 27 *Pa. Dist & Co. R. 2d* 93 (Mercer Co. Ct. 1961). All held that the state was not barred, by reason of 42 *U. S. C.* § 407, from recovery of the overlapping payments out of the subse-

---

[7]New Jersey has an exemption statute with respect to state assistance advances substantially similar to 40 *U. S. C.* §407. *N. J. S. A.* 44 :7–35. As far as we know, it has never been urged that the section bars the state from obtaining reimbursement out of the very funds paid for state assistance erroneously or improperly advanced.

quent social security payment. They said in substance that the state had, in fact, paid an obligation of the federal government; that, if the recipient were allowed to retain the social security benefits he would in effect be receiving double benefits for the same period of time; and that allowance of the state's claim advanced, rather than defeated, the end of the federal legislation.

There are, however, well reasoned and long accepted state court decisions reaching a similar result with respect to the effect of a substantially analogous exemption provision in the federal veterans benefits law, 38 *U. S. C.* § 3101(a). Involved were state claims against such benefits, paid to the guardian of an incompetent veteran and deposited in a bank account, for maintenance and care furnished the veteran in a state mental institution. The leading case is *In re Lewis' Estate,* 287 *Mich.* 179, 283 *N. W.* 21 (1938) (relied upon in *Garlick, supra*), which held that it could not have been the intention of Congress to bar the state in such a situation because veterans benefit payments were furnished for the purpose of making the means available to the guardian to obtain the very support which the state had furnished. Other decisions to the same effect are: *In re Bemowski's Guardianship,* 3 *Wis.* 2d 133, 88 *N. W.* 2d 22 (1958); *Department of Public Welfare v. Sevcik,* 18 *Ill.* 2d 449, 164 *N. E.* 2d 10 (1960); *Savoid v. District of Columbia,* 110 U. S. App. D. C. 39, 288 *F.* 2d 851 (1961); *State v. Bean,* 159 *Me.* 455, 195 *A.* 2d 68 (1963). It is at least interesting to note that, although the veterans benefit act has been amended since *Lewis,* the exemption section has not been changed.

Defendant also raises two other points: (1) that the reimbursement agreement provision, *N. J. S. A.* 44:7–14, is narrowed by *N. J. S. A.* 44:1–95; and (2) that the reimbursement agreement is void for vagueness in not specifically stating what property of the individual a welfare board can reach. Both are so lacking in merit as not to require discussion.

We therefore conclude that plaintiff is entitled to recover from the bank account the amount of overlapping federal benefits. Since, as we have said, this amount cannot be accurately determined from the information before us, the matter must be remanded for that purpose and the entry of an accordant judgment.

The judgment of the Appellate Division is reversed and the cause is remanded to the Essex County Court for further proceedings as directed in this opinion. No costs.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.