## WEST et al. v. ANDERSON et al.

No. 24608.   March 19, 1935.

James A. Brady and R. E. Stephenson, for plaintiffs in error.

Streeter Speakman and S. A. Denyer, for defendants in error.

PER CURIAM. The plaintiffs in error, A. R. West and L. R. Welch, partners, doing business under the firm name of West & Welch, drilling contractors, and defendants in error, S. M. Anderson, C. C. Clampitt, B. T. Moore, J. W. Pinkston, S. A. Denyer, M. M. Barney, partners, doing business under the name of Newark Oil and Gas Company, occupy the same relative position in this court as in the case below, and will be referred to, respectively, as "plaintiffs" and "defendants."

Plaintiffs brought this action against the defendants in the district court of Creek county, Okla., for the recovery of money and the petition of plaintiffs contained two causes of action. The issues were joined by answer and reply, and, upon the trial of this cause, a judgment resulted in favor of the defendants and against the plaintiffs, from which judgment plaintiffs appealed.

Plaintiffs make nine assignments of error, but, apparently, rely on the following assignments of error, to wit:

(1) That the trial court erred in sustaining the demurrer of the defendants to the evidence of plaintiffs in support of plaintiffs' second cause of action.

(2) In permitting the defendants to introduce oral evidence on the first cause of action seeking to establish an oral agreement claimed to have been entered into, after the execution of the written agreement, in modification of the written agreement.

(3) In overruling plaintiffs' motion for a money judgment against all of the defendants at the close of all the evidence.

(4) In overruling the demurrer of plaintiffs to evidence of the defendants.

(5) In overruling plaintiffs' motion for a new trial.

In plaintiffs' first cause of action in their petition, they seek to recover a money judgment against the defendants in the amount of $1,872.73, with interest from May 14, 1929, until paid, and allege that plaintiffs drilled two oil and gas wells for defendants under a written contract dated May 3, 1928, and set up a copy of such contract as Exhibit A to plaintiffs' petition, but it is not necessary to set forth such Exhibit A to

arrive at a determination of this case. Exhibit A was merely a simple drilling contract, and among other things, provided for payment for drilling at the rate of $1.25 per foot. The wells drilled under said contract were designated as Clampitt No. 1 and Clampitt No. 2, payment for drilling the same having been duly made. That thereafter plaintiffs and defendants had oral negotiations on or about July 1, 1928, relating to the drilling of two additional wells described as "Smalley No. 1" and "Clampitt No. 3," which wells were to be drilled on the same terms as specified in the original written contract. Plaintiffs claim there is due thereon from the defendants the sum of $2,656.75, which wells were completed on November 17, 1928; that on or about November 17, 1928, plaintiffs and defendants entered into a contract in writing where the amount alleged to be due by the defendants from plaintiffs was fixed; the interpretation and application of such contract, which was marked "Exhibit B" and attached to plaintiffs' petition, is admittedly decisive of this case.

Plaintiffs claim that under and by virtue of such contract, the defendants acknowledged the amount of the indebtedness, and that plaintiffs acquired a lien in the nature of a pledge on the proceeds to be derived from the sale of gas out of the wells drilled by plaintiffs for defendants, and that such pledge was collateral to the debt, the defendants asserting in their answer that according to said contract the plaintiffs must look for payment of the amounts set up therein solely to the proceeds derived from the sale of gas.

Plaintiffs further allege that defendants violated such last-mentioned written contract by neglecting to market "gas" and charge improper operation of the wells and gas lines subsequently laid to the leases in question.

Plaintiffs admit that they received $784.02 from the sale of gas from said wells during the months of January to May, inclusive, 1929, leaving a balance of $1,872.73, and that, after May 14, 1929, the defendants failed to produce any gas from such lease and removed all equipment therefrom.

On plaintiffs' second cause of action they seek a money judgment against the defendants in the amount of $1,532.50, with interest at 6% per annum from March 21, 1929, and allege that plaintiffs had certain oral negotiations with defendants for the drilling of two additional oil and gas wells under the same terms as provided in said

original contract of May 3, 1928. That another well was drilled and completed on February 5, 1929, and that defendants became obligated to plaintiffs for the drilling thereof in the amount of $1,238.75; that under the same terms and conditions another well was drilled and completed on March 19, 1929, and that the defendants became obligated to plaintiffs therefor in the sum of $1,293.75; that on February 7, 1929, defendants paid plaintiffs $500 on the drilling of said wells and a like sum on March 21, 1929, leaving the balance hereinbefore mentioned.

Plaintiffs further charge that such wells were oil wells and that defendants failed to shoot such wells, and that such wells would have produced approximately 20 barrels per day had the defendants properly operated the same. Plaintiffs seek a total judgment on both causes of action in the amount of $3,405.23, with interest and costs. Exhibit B is as follows:

"This agreement made and entered into this 17th day of November, 1928, by and between the Newark Oil & Gas Company, a partnership of Drumright, Okla., party of the first part, and West and Welch Drilling Contractors, a partnership of Cherryvale, Kan., party of the second part, Witnesseth:

"Whereas, The individuals composing and comprising the first party are the owners of oil and gas leases covering the following described property, to wit:

"The east west halves of the southwest quarter of section 15, township 30, range 17, all in Wilson county, Kansas, and

"Whereas, second party drilled for first party what is known as wells Nos. 1 and 2, for certain cash considerations which have been paid, and thereafter drilled what is known as Smalley No. 1 on the west half of said land and Clampitt No. 3 on the east half of said land for first party and agreed to take their pay from the sale of gas from said wells—Clampitt No. 2 and 3 and Smalley No. 1, said Clampitt No. 1 not being a producer, and

"Whereas, first party is now indebted to second party for the drilling and other work in connection with said Smalley No. 1 in the sum of $1,053, and is indebted to second party for the drilling and other operations in connection with said Clampitt No. 2 in the sum of $1,603.75, or a total sum of $2,656.75, and

"Whereas, After considerable negotiations by and on behalf of parties hereto arrangements are about to be completed whereby the gas from said leases will be sold, and

"Whereas, first party through its various individuals composing it will receive by the terms of said lease seven-eighths of the sale

price of said gas, payments to be made monthly,

"Now, Therefore, in consideration of the covenants and agreements herein set forth, it is agreed as follows:

"First. First party agrees to pay to second party until the aforesaid sum of $2,656.75 is paid, seven and one-third cents (.07 1/3c) per thousand on seven-eighths of all the gas sold from each of said wells.

"Second. First party and the individuals composing it further pledge to second party a first lien upon the sale price of said portion of said gas sold, to wit, 7-1/3c per M, for said wells until said sum of $2,656.75 has been fully paid and in the event of a sale or transfer by any of the parties of their respective interests in said lease covering said premises prior to the payment in full of said amount to second party, then said assignment shall expressly provide that the same is subject to lien of second party herein for the payment to second party of said sum aforesaid.

"Third. It is further specified that payments shall go forward monthly to second party within five days after receipt by first party of the sale price of said gas.

"Newark Oil and Gas Co., a Partnership.

"Witnesses to Signatures of First Party:

"_____
"_____

"By (Sgd) S. M. Anderson,
"(Sgd) C. C. Clampitt,
"(Sgd) B. T. Moore,
"(Sgd) J. W. Pinkston,
"(Sgd) S. A. Denyer,
"(Sgd) M. M. Barney,

"West and Welch, Drilling Contractors, a Partnership.

"Witnesses to Signature of Second Party:

"_____
"_____

"By (Sgd) A. R. West,
"(Sgd) L. R. Welch."

Thereafter, defendants filed their answer to plaintiffs' first cause of action, which answer consisted of a general denial coupled with certain admissions not material to the things under consideration, and defendants deny agreeing to pay for any wells, except solely from the proceeds of the sale of gas from said wells, and alleged that the written contract of November 17, 1928, and hereinbefore shown, was a modification of the oral drilling contracts alleged by plaintiffs.

Defendants further denied the oral statements pleaded by plaintiffs in their petition and set out their version thereof and pleaded full compliance with all agreements.

Defendants' answer to plaintiffs' second cause of action consisted of a general denial and referred to their answer to the first cause of action and alleged that on the last two wells designated as Clampitt No. 2 and Webber No. 1, defendants were to pay $500 cash for each well and the balance solely out of the proceeds to be derived from the sale of gas therefrom, and charged that plaintiffs had abandoned said last two wells, and an additional plea of estoppel.

Defendants further alleged that the wells known as Clampitt No. 2, Clampitt No. 3, and Smalley No. 1 were the only producing wells.

Defendants further pleaded full compliance with their agreement with plaintiffs and prayed, generally, for relief. Thereafter, plaintiffs filed a reply consisting of a general denial.

Upon the issues thus presented, the case proceeded to trial, and, upon statements of counsel for both plaintiffs and defendants, it appears that the amounts were not in controversy, but only the liability of defendants to pay the same.

Plaintiffs thereupon sought to make their case on both of their causes of action by the simple expediency of having identified and introducing in evidence the two written contracts hereinbefore mentioned, and, thereafter, resting their case without the offer of any supporting testimony.

Plaintiffs then moved for judgment on the pleadings, statements of counsel and evidence introduced, which was overruled by the court.

Thereupon, the defendants demurred separately to plaintiffs' evidence as to both causes of action, such demurrer being by the court overruled as to plaintiffs' first cause of action and sustained as to the second cause of action. The defendants proceeded to introduce evidence in support of their answer to plaintiffs' first cause of action, which evidence amply sustained defendants' contention that the amount of money set up by plaintiffs was not in controversy, but that under the oral negotiations and contracts supplementing the execution of the original agreement and preceding the execution of the last written contract of November 17, 1928, plaintiffs were to look for payment solely to the proceeds derived from the sale of gas produced from

said wells and sold, and which testimony was consistent with such last-mentioned written contract. Upon conclusion of defendants' testimony, plaintiffs demurred to defendants' evidence, which was overruled, and thereafter moved for judgment, which was overruled, and thereupon the court rendered judgment against the plaintiffs and for the defendants on both causes of action.

Motion for new trial was filed, overruled and brought to this court for review by petition in error and case-made.

1. Plaintiffs attempt to construe the oral negotiations between plaintiffs and defendants into what plaintiffs call an assignment of an interest in the oil and gas lease, and contend that such assignment was void for the reason that it was within the statute of frauds. Such contention is not supported by any evidence or theory in this case, as the defendants claim that plaintiffs were to look solely for payment to the proceeds to be derived from the sale of gas produced from said wells, which would amount to an assignment of proceeds and not to an assignment of an interest in the oil and gas lease. Consequently, plaintiffs' assignment of error on this ground is untenable and has no application to the facts or issues involved in this case.

The rule is aptly stated in the Pennsylvania case of Keller v. Cohen, 73 Atl. 918, as follows:

"It is competent for parties to contract for the payment of an obligation out of a particular fund and in a particular manner."

2. Plaintiffs charge that the trial court committed reversible error in that defendants offered parol evidence in an attempt to change, vary or contradict the written agreement between plaintiffs and defendants. With this contention, we do not agree. An examination of the written contract of November 17, 1928, discloses that plaintiffs had "agreed to take their pay from the sale of gas from said wells—Clampitt No. 2 and 3 and Smalley No. 1." The court properly permitted the defendants to explain the oral negotiations pleaded by plaintiffs in their amended petition and by defendants in their answer, and such testimony instead of varying, changing or contradicting the terms of such agreement, tended, in all respects, to corroborate the position of defendants, and was not inconsistent with such written agreement.

All of the cases cited by plaintiffs have been carefully read and analyzed, but are not applicable to the facts in this case. This court has heretofore held in the case of Holmes v. Evans, 29 Okla. 373, 118 P. 144, that:

"While a written contract cannot be contradicted by parol evidence, it is permissible, where the writing does not purport to set out the entire contract, to show by parol other stipulations, not inconsistent with those expressed. Where a contract rests partly in parol, that part which is in writing is not to be contradicted by parol evidence."

And while the facts are not especially applicable, nevertheless, the rule of law announced in the case of Tradesmen's Nat. Bank of Oklahoma City v. Harris, 145 Okla. 54, 291 P. 38, is appropriate, wherein it is held:

"Conduct of parties may be proven to establish interpretation placed on agreement by parties themselves; testimony of those with knowledge of manner in which transaction was handled and records reflecting same is competent to shed light on controversy involving interpretation of agreement."

It was held in the case of Hartley et al. v. Riley, 85 Okla. 101, 204 P. 920:

"That parol proof of the transaction contemporaneous with the taking of said note is competent to show the purpose of taking the same and the manner of payment or liquidation of said note, and does not contravene the rule that parol proofs cannot be taken to contradict the terms of a written contract."

This rule is supported by a long line of decisions shown in the body of the opinion. The instrument relied upon by plaintiffs shows on its face, and it is so interpreted by this court to mean, that the plaintiffs, in payment for their services as drilling contractors, were to look exclusively for their pay to the proceeds derived from the sale of gas from the wells mentioned in said contract, and such being true, it was not necessary to introduce parol testimony on this point. Consequently, if the admission of parol evidence was erroneous, the same would be harmless and plaintiffs could not complain thereof. As we view such evidence, the same was consistent with the written contract and did not tend to vary, change or contradict the terms thereof. Defendants, in support of their contentions, cite the following cases: Barricklow v. Boice et al., 50 Okla. 260, 150 P. 1094; Brown et al. v. Coppadge. 54 Okla. 88. 153 P. 817; D'Yarmett v. School District No. 27. 72 Okla. 124. 179 P. 20; Strange v. Hicks, 78 Okla. 1, 188 P. 347; Berg v. Erickson, 234 F. 817; Ferry & Co. v. Forquer (Mont.) 202 P. 193; Holmes

v. Evans, supra; King v. Gant, 77 Okla. 105, 186 P. 960.

If the trial court was of the opinion that the contract under consideration was ambiguous, the court was within its rights in permitting the introduction of parol evidence under the rule announced in the case of Strange et al. v. Hicks et al., supra, as follows:

"If a contract is ambiguous and uncertain, a court may hear oral proof to ascertain the contemporary construction placed thereon. If the acts of the parties show that each has placed the same construction thereon, then in such a case their construction should be given great weight. It is to be assumed that the parties to a contract know best what is meant by its terms and are the least liable to be mistaken as to its intention."

No evidence was offered by plaintiffs except the written agreements hereinbefore mentioned, and the testimony of defendants stood unchallenged. Consequently, we may assume the truthfulness thereof.

3. The trial court committed no error in sustaining the demurrer of the defendants to the evidence of the plaintiffs on plaintiffs' second cause of action, for the reason that no evidence whatsoever was introduced in support of said second cause of action, unless a very strained construction would be placed upon the introduction of plaintiff's written contracts. We are unable to see how such evidence had any bearing on the matters alleged in plaintiffs' second cause of action.

The disposition of the assignments of error relied upon by plaintiffs disposes of all other assignments of error set up by plaintiffs.

The judgment of the lower court was correct, and is affirmed.

The Supreme Court acknowledges the aid of Attorneys R. W. Simons, A. L. Zinser, and M. C. Garber in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Simons and approved by Mr. Garber and Mr. Zinser, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. PHELPS, J., absent.