STATE OF MARYLAND CENTRAL COLLEC-
TION UNIT *v.* FREDERICK R. STEWART

\* \* \*

STATE OF MARYLAND CENTRAL COLLECTION
UNIT *v.* EMMETT C. PETWAY

[No. 20, September Term, 1981.]

*Decided December 30, 1981.*

The cause was argued before MURPHY, C. J., and SMITH,
DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*John K. Anderson, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Ronald J. Rinehart, Assistant Attorney General,* on the brief, for appellant.

*Amicus curiae* brief for the United States Department of Health and Human Services filed. *Randolph W. Gaines, Chief of Litigation,* and *Natalie R. Dethloff, Attorney,* on the brief.

*Ethel Zelenske,* with whom was *Dennis W. Carroll* on the brief, for appellees.

RODOWSKY, J., delivered the opinion of the Court. ELDRIDGE and COLE, JJ., dissent. ELDRIDGE, J., filed a dissenting opinion at page 263 *infra,* in which COLE, J., concurs.

In these cases the petitioner, State of Maryland, acting through the Central Collection Unit (the State), seeks judgments against the respondents for reimbursement of part of the cost of care and treatment rendered to the respondents in a state mental hospital during specified periods in the past. The amount of liability for reimbursement is limited by ability to pay.[1] Because social security benefits were the sole income of each of the respondents during the periods for which the State claims reimbursement, the respondents contend that the entry of judgments will violate § 207 of the Social Security Act, 42 U.S.C. § 407 which reads:

---

1. Under Md. Code (1957, 1980 Repl. Vol.), Art. 43, § 601 (a) the "Secretary of Health and Mental Hygiene shall by rule and regulation set charges for services rendered by the Department in ... State hospitals ... for the physically and mentally ill ...." The Department "shall investigate the financial condition of all patients, their responsible relatives, and other persons legally chargeable for any obligation of the patient in order to determine the ability of the patient or his responsible relatives to pay for the cost of care of the patient." § 601 (b) (1). The Department is to specify the time and amount of payments and in "setting the amounts of payments, the Department shall consider the financial means or abilities of the patient ... and may agree to accept less than the charges established for the care received." § 601 (c) (2). Under § 601 (b) (2), "public assistance payments shall be taken into consideration as financial resources."

> The right of any person to any future payment under this subchapter [II] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

For reasons hereinafter stated, we shall hold that the mere entry of judgment under the facts in these cases does not violate the federal act.

Each respondent had been charged with crime, found not guilty by reason of insanity, and committed to the custody of the Department of Health and Mental Hygiene. *See* Md. Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.), Art. 59, §§ 27-28. Respondent Frederick R. Stewart (Stewart) was a patient at Clifton T. Perkins Hospital Center from March 8, 1974 until his release in 1979. Inquiry by the State with the Social Security Administration developed that Stewart began receiving social security benefits in the amount of $206.70 per month on November 1, 1975. A reimbursement rate of $181.70 per month was established for Stewart, after an allowance of $25.00 per month for personal needs. *See generally* Code of Maryland Regulations, § 10.04.02.03. When Stewart's social security benefits increased on October 1, 1976 to $219.90 per month, the reimbursement rate was established at $194.90, after a personal needs allowance. In its suit against Stewart the State claimed $4,095.71 as reimbursement for care and treatment rendered from November 1, 1975 through November 30, 1978. Respondent Emmett C. Petway (Petway) became a patient at Clifton T. Perkins Hospital Center on April 13, 1976. As of June 1, 1977 Petway began receiving, as his own payee, social security benefits of $315.70 per month. A reimbursement rate was set for Petway of $285.70 per month, after a $30.00 per month personal needs allowance. Reimbursement of $4,000.14 is claimed from Petway for the period June 1, 1977 through July 31, 1978. It is the State's position that it may

use legal process against the respondents without violating § 407, so long as it does not use legal process against the social security benefit "moneys paid."

Judgments were entered in the District Court of Maryland in favor of the respondents. The Circuit Court for Howard County affirmed on the ground that "the State is precluded from considering the receipt of Social Security benefits in determining ability to pay for the cost of confinement, and then suing to obtain a judgment for such sums, as such actions constitute 'other legal process' within the meaning of 42 U.S.C., Section 407 . . . ." We granted the State's petition for certiorari in order to resolve the question.

An amicus brief for the United States Department of Health and Human Services states the position of the Secretary of that department:

> [42 U.S.C. § 407] does not prohibit a State from considering social security benefits in determining ability to pay, for purposes of assessing care charges. Nor does [42 U.S.C. § 407] preclude a State from suing an individual to obtain a judgment for amounts due it for services. However, [42 U.S.C. § 407] does preclude a State from taking any action to enforce the judgment against social security benefits.

Section 407 was the basis of decision in *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973). William Wilkes had applied to that welfare agency for financial assistance based upon need by reason of permanent and total disability. As a condition of receiving assistance, Wilkes was required by New Jersey statute to execute an agreement to reimburse the county welfare board for all payments received under the assistance program. The apparent purpose of this requirement was "to enable the board to obtain reimbursement out of subsequently discovered or acquired real and personal property of the recipient." *Id.* at 414, 93 S. Ct. at 591, 34 L. Ed. 2d at 610. Wilkes began receiving the State assistance payments no

later than January 1, 1967. He was also advised to apply for federal disability insurance benefits under the Social Security Act. In 1968 Wilkes was awarded retroactive disability insurance benefits for the period from May 1966 into the summer of 1968 in the amount of $1,864.20. The check for that amount was deposited in a bank account held by Doris Philpott as trustee for Wilkes. Under then applicable New Jersey law, the filing of a notice of a welfare payments reimbursement agreement had the same force and effect as a judgment.[2] The welfare board, after filing notice of the reimbursement agreement, obtained an order of the Essex County Court, Law Division, for the defendants "to show cause why a judgment should not be entered in favor of plaintiff . . . directing the Fidelity Union Trust Company to turn over to it moneys on deposit in the bank in the name of Doris Philpott." 104 N.J. Super. 280, 281-82, 249 A.2d 639, 640 (1969). The Supreme Court of New Jersey concluded that funds could be ordered paid to the welfare agency. 59 N.J. 75, 279 A.2d 806 (1971). The United States Supreme Court reversed. After holding that § 407 did not place a State in a preferred position as compared with any other creditor of the benefits recipient, it said (409 U.S. at 416, 93 S. Ct. at 592, 34 L. Ed. 2d at 611):

> The protection afforded by § 407 is to "moneys paid" and we think the analogy to veterans' benefits exemptions which we reviewed in *Porter v. Aetna Casualty Co.,* 370 U.S. 159 [, 82 S. Ct. 1231, 8 L. Ed. 2d 407 (1962)], is relevant here. We held in that case that veterans' benefits deposited in a savings and loan association on behalf of a veteran retained

---

2. 1959 N.J. Laws, Ch. 128, § 44:7-15 provided in relevant part:

At any time the county welfare board may execute and file with the county clerk or register of deeds and mortgages, as the case may be, a certificate . . . showing the amount of assistance advanced to said person, and when so filed each certificate shall be a legal claim against both the recipient and his spouse with the same force and effect as a judgment of the County Court, law division, of the county, with priority over all unsecured claims except burial and funeral expenses not to exceed $255.00.

the "quality of moneys" and had not become a permanent investment. *Id.* at 161-62 [, 82 S. Ct. at 1233, 8 L. Ed. 2d at 410].

In the instant matter the judgment which the State seeks may be analogized to the filing of the reimbursement notice in *Philpott* which had the effect of a judgment. *Philpott* does not suggest that the entry of the New Jersey judgment representing the amount for which the recipient of welfare benefits was liable to make reimbursement constituted a violation of § 407. The Essex County Welfare Board encountered the bar of § 407 when it sought to reach the social security funds on deposit for the benefit of the recipient, because that demand deposit retained the character of "moneys paid" under subchapter II of the Social Security Act. In the case at bar the State does not seek to reach the social security benefits of the respondents.[3] The State's position is that it desires to have a judgment only to be in a position to move against any assets of the respondents which are not exempt from execution and which the State might discover, or which the respondents might subsequently acquire. We hold that the entry of judgment on the claim for reimbursement is not the use of legal process against "moneys paid" as social security benefits.

Respondents cite Supreme Court cases from which they conclude that "a State may not artfully circumvent federal anti-attachment statutes." Their principal reliance is on

---

3. We are advised that a consent judgment of October 11, 1973 is outstanding in the United States District Court for the District of Maryland in Virgil Brown et al. v. Neil Solomon et al., Civil Action No. 73-625-K. Neil Solomon was formerly the Secretary of the Department of Health and Mental Hygiene of the State of Maryland. That consent judgment provides in part:

> [T]hat the Defendants shall henceforth take no action to subject to execution, levy, attachment, garnishment, or other legal process any monies paid pursuant to 42 U.S.C., Chapter 7, Sub-chapter 2, Sections 401-431 (hereinafter referred to as Social Security benefits), to persons confined in public mental health facilities of the State of Maryland, in violation of 42 U.S.C., Section 407 as interpreted by the Supreme Court in its recent decision of *Philpott v. Essex County Welfare Board,* 409 U.S. 413 (1973) . . . .

*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), which held that a community property division of retirement benefits under the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.* (1976) violated the anti-assignment provisions of that Act.[4] One of the wife's contentions in that case was that her husband's railroad retirement benefits would not be subjected to legal process if the divorce court, after calculating the value of the retirement benefits earned during marriage, directed an equal amount be paid out of other community property available for distribution, *e.g.,* the couple's home. The Court concluded that an offsetting award "would improperly anticipate payment by allowing [the wife] to receive her interest before the date Congress has set for any interest to accrue" and would also frustrate federal policy as reflected by provisions of the Railroad Retirement Act other than the anti-assignment section. *Id.* at 589, 99 S. Ct. at 812, 59 L. Ed. 2d at 15.

Where a state court ordered a retired military officer to pay a specified percentage of his military nondisability retirement pay to his former wife as community property upon dissolution of the marriage, the Supreme Court held the order violated the scheme of federal military nondisability retirement pay. *McCarty v. McCarty,* 453 U.S. 210, 229-29 n.22, 101 S. Ct. 2728, 2739 n.22, 69 L. Ed. 2d 589, 603 n.22 (1981) ("[E]ven if there were no explicit prohibition against 'anticipation' here, it is clear that the injunction against attachment is not to be circumvented by the simple expedient of an offsetting award.")

In the foregoing cases the underlying obligation of one spouse was to divide community property, as defined by state law, with the other spouse. State law considered the federally protected benefit to be community property. But

---

4. 45 U.S.C. § 231m (1976) in relevant part provides:
[N]o annuity . . . shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated. . . .

when the state courts ordered one spouse to make the community property division either directly out of the federally exempted property, or out of other property in order to satisfy the state obligation to divide the federally exempt property, the state law had to yield to the superior federal law. In the instant matter, however, the State does not claim a liability of the respondents to pay social security benefits to the State. Respondents' underlying liability to the State arises from the statutory obligation to pay for care and treatment received at a State mental hospital. The amount of that liability is based on the cost of the service provided, limited by ability to pay. The rationale of cases like *Hisquierdo* has no application here.

It is true that, in these cases, respondents' sole known income consists of social security benefits. Absent those benefits, no reimbursement rate would have been set for the respondents and no judgment would have been sought for the periods of care involved here. But respondents concede that they "have *never* contended that the rate-setting process *alone* was violative of Section 407." (Emphasis in original.)

The correct analysis of the issue in this case was made in *Selelyo v. Commonwealth of Pennsylvania, Department of Public Welfare,* 34 Pa. Commw. Ct. 235, 382 A.2d 1308 (1978). The Pennsylvania Department of Public Welfare made an assessment for mental retardation services on a patient in a state facility. On the patient's appeal from the assessment, the record did not disclose whether the patient was receiving benefits protected by 42 U.S.C. § 407 but the court said (*id.* at 238, 382 A.2d at 1309):

> Assuming, arguendo, that Petitioner was receiving protected benefits, this action to establish liability is not a suit brought to subject his benefits to "execution, levy, attachment, garnishment or other legal process." *Philpott* does not prohibit a State from establishing liability, nor does it prevent the State from becoming a creditor of Petitioner. It

merely precludes the State's use of legal process to
collect its claim from the protected benefits.

> *Judgments of the Circuit Court for
> Howard County vacated.*
> *Cases remanded to that Court with
> instructions to remand the cases
> to the District Court of Maryland
> for Howard County for further
> proceedings consistent with this
> opinion.*
> *Costs to abide the result.*

*Eldridge, J., dissenting:*

The rationale for the State's argument in these cases, as
set forth in the majority opinion, is that the State "desires to
have a judgment only to be in a position to move against any
assets of the respondents which are not exempt from execu-
tion and which the State might discover, or which the
respondents might subsequently acquire." If this "desire" of
the State were authorized by Maryland law, I would agree
that the entry of judgment on the State's reimbursement
claim would not violate 42 U.S.C. § 407.

However, as the State and the majority acknowledge,
Maryland law does not authorize the State to set a
reimbursement rate and obtain a judgment against patients
having no income and no assets. The State is not entitled to
secure a judgment merely for the purpose of moving in the
future against subsequently discovered or subsequently
acquired assets. Rather, under Maryland Code (1957, 1980
Repl. Vol.), Art. 43, § 601, and the applicable regulations,
an investigation by the State Department of Health and
Mental Hygiene into the financial condition of the patient,
and a determination that the patient is able to pay, are
prerequisites to the patient's liability.[1]

---

1. This point was expressly conceded by the State in its brief, as follows
(Petitioner's Brief, p. 8):

"Under state law, Defendants are liable, not for the actual cost
of services rendered them in Clifton T. Perkins, but only for such

Since the respondents have no income or assets other than social security benefits, the State law basis for any judgments against the respondents rests entirely upon their receipt of social security payments. "But for" respondents' entitlement to social security benefits, the State would not be authorized to proceed against them in court. Under these circumstances, I believe that permitting the State to obtain judgments does subject the respondents' right to social security benefits to "other legal process" within the meaning of 42 U.S.C. § 407.

In *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L. Ed. 2d 608 (1973), the Supreme Court stated that 42 U.S.C. § 407 "imposes a broad bar against the use of *any legal process* to reach all social security benefits." (409 U.S. at 417, 93 S.Ct. at 592, emphasis supplied). Using the entitlement to social security benefits as the basis for obtaining judgments against social security recipients, violates the statute as interpreted in *Philpott*. Both the District Court and the Circuit Court for Howard County correctly applied 42 U.S.C. § 407. I would affirm.

Judge Cole has authorized me to state that he concurs with the views expressed herein.

---

sum, not exceeding the actual cost, as the Maryland Department of Health and Mental Hygiene determines they are able to pay, based on that Department's investigation of the patients' resources. (Article 43, Section 601, Maryland Annotated Code, and applicable regulations.) A patient's legal liability for his care and treatment is limited by his ability to pay at the time of his hospitalization. Any subsequent change in his ability to pay does not affect the patient's liability for past periods of hospitalization. Section 601 (b) 2 explicitly requires that in setting the rate of reimbursement 'public assistance payments' shall be taken into consideration as to financial resources.' "