The FIRST NATIONAL BANK AND
TRUST COMPANY OF ADA, a
corporation, Appellee,

v.

Ovie Joe ARLES, Appellant.

No. 67477.

Supreme Court of Oklahoma.

July 30, 1991.

T. Walter Newmaster, Benson and Newmaster, Ada, for appellee.

Kerry Glen Spradlin, Becky J. Miles Viers, Steven A. Novick, Gary A. Taylor, Stan L. Foster, Gary W. Dart, Legal Aid of Western Oklahoma, Inc., Shawnee, for appellant.

Kim Savage, Gill Deford, Joel L. Carson, National Sr. Citizens Law Center, Los Angeles, for amicus curiae, Oklahoma Alliance on Aging.

ORDER

Petition for rehearing filed in this cause is granted and this court's opinion promulgated herein on October 16, 1990 and reported at 61 OBJ 2723 is withdrawn and replaced by the opinion filed this date.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

SIMMS, J., concur in part; dissent in part.

DOOLIN, HARGRAVE and ALMA WILSON, JJ., dissent.

SUMMERS, Justice:

May judicial proceedings in the district court be used to force a judgment debtor to pay money to the plaintiff creditor where the defendant debtor's sole source of income is social security and disability benefits? The question has not been presented before to this Court. Upon review of the applicable federal statute and cases from other jurisdictions we answer in the negative.

The First National Bank of Ada agreed to loan Arles money for an automobile. When Arles failed to make the payments required by the terms of the loan the Bank

obtained judgment against him. Arles failed to satisfy the judgment and the court ordered him to appear for a hearing on assets. He appeared and agreed to make payments in the amount of sixty ($60.00) dollars per month. He again failed to make payments, and the Bank filed a contempt action. Upon hearing, the court determined that Arles received social security and disability benefits in the amount of four hundred dollars ($400.00) a month. As to other possible sources of income, the attorney for the Bank made statements implying that Arles had worked for some four months during 1979, but there is no evidence to support these suggestions. The only evidence in the record is that Arles was unemployed and had no income other than the benefits received from Social Security and disability. The trial court found that Arles had wilfully failed to make the required payments, deferred judgment and sentence, and modified the amount of the required payments to fifty ($50.00) dollars per month.

Arles appealed. The Court of Appeals affirmed by unpublished opinion. We have granted certiorari to review the proposition of first instance here.

Before addressing the substance of this case, we first must inquire into our own jurisdiction to resolve the matter. Although the order complained of found that Arles was guilty of contempt, sentence was deferred for six months. A court minute in the record indicates that the parties were concerned about the appealability of such an order. The trial court offered to accelerate the deferred sentence to assure its finality. However, the record does not show such was done.

■ A deferred sentence in a criminal proceeding is not final order; the district court retains jurisdiction until judgment and sentence is entered pursuant an application to accelerate. *Nguyen v. State*, 772 P.2d 401, 403 (Okla.Crim.App.1989); 22 O.S.1981 § 991c. We recognize that an indirect contempt action is civil in nature and not governed by the criminal law,

*Browning v. Ray*, 440 P.2d 721, 725 (Okla. 1968). However, the proceedings appear analogous in considering the appealability of an order. An order in contempt proceeding is thus not appealable until the judgment and sentence become final. See *Hampton v. Hampton*, 609 P.2d 772 (Okla. 1980). The finding that this was not an appealable order, however, does not necessarily preclude that its substance be reviewed. We customarily look to the content and substance of an instrument filed in this court rather than its form or title, *Horizon's, Inc. v. KEO Leasing Co.*, 681 P.2d 757 (Okl.1984), and sometimes treat a paper entitled "Application to Assume Original Jurisdiction" as a Petition in Error, or vice versa. *Amarex, Inc. v. Baker*, 655 P.2d 1040 (Okl.1983).

■ Here, the relief sought by Arles is a ruling by this Court to prohibit the enforcement of the trial judge's order. We do not treat the matter as an appeal (in which case it would be premature), but rather look to its substance, and recast it as an original proceeding asking for a writ of prohibition. We now turn to the substantive issue raised by Arles to determine whether the writ shall issue.

■ Before us the bank urges the correctness of the trial court's ruling. Arles argues that under the federal statute and case law from other jurisdictions, his social security and disability benefits are not subject to the "legal processes" of the state. In support of his argument, he cites as controlling 42 U.S.C. § 407(a) and *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).

Federal law at 42 U.S.C. § 407(a) specifically exempts social security benefits from certain types of creditor remedies:[1]

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and *none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or*

---

1. The language of this section appears as well in the Oklahoma Social Security Act at 56 Okl.Stat.

1981 § 173. It also exempts state disability benefits paid pursuant to 56 Okl.Stat.1981 § 164.

*other legal process,* or to the operation of any bankruptcy or insolvency law. (emphasis ours)

The purpose of the statute is to "preclude beneficiaries from diverting their social security payments away from the statute's seminal goal of furnishing financial, medical, rehabilitative and other services to needy individuals." *Dept. of Health v. Davis,* 616 F.2d 828, 831 (5th Cir.1980).

In *Philpott v. Essex County Welfare Board, supra,* the United States Supreme Court addressed Section 407(a) and its restrictions. There, an individual named Wilkes applied for assistance with the Essex County Welfare Board. As a condition to receiving benefits the Board required Wilkes to sign a reimbursement agreement. The agreement had the effect of a judgment, and allowed the Board to obtain reimbursement from property acquired subsequently. Wilkes received benefits from Essex County, and was soon awarded retroactive disability benefits under the Social Security Act. Wilkes refused to repay the money he had received from Essex County, so the Board sued to reach the bank account in which Wilkes had deposited his benefit check. The Supreme Court held that Section 407(a) prevented the Board from reaching these funds because Section 407(a) "imposes *a broad bar against the use of any legal process* to reach all Social Security benefits." *Id.,* at 417, 93 S.Ct. at 592. (Emphasis ours) In making this ruling, the Court explained that the state of New Jersey was not a "preferred creditor" as compared to any other judgment creditor. *See also Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988).

In interpreting the rule of *Philpott,* courts have arrived at varying conclusions. The court in *Household Corp. v. Chase Manhattan Bank,* 91 Misc.2d 141, 397 N.Y.S.2d 564 (N.Y.1977) held that "creditors cannot recover the proceeds of social security payments from a savings or checking account where they have been placed by a judgment debtor." In *State Central Collection Unit v. Stewart,* 292 Md. 255, 438 A.2d 1311 (1981), the state sought reimbursement for medical care given by the

state. The court allowed the state a judgment against only that money which was "non-exempt"; the state was not allowed a judgment against social security benefits.

Reaching a contrary result, the court in *Russo v. Russo,* 1 Conn.App. 604, 474 A.2d 473, 477 (1984), a case relied on by Bank in its brief, ruled that "nothing in [Section 407(a)] prevents the use of the funds, when received, to pay loans or debts for which the beneficiary is obligated where the agreement to repay does not delineate the source of the repayment." *See also Tidwell v. Schweiker,* 677 F.2d 560, 568 (7th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983). Apparently the court found to be determinative the fact that no source was delineated in the agreement. The court there allowed the judgment to be enforced against the defendant's social security benefits, even though this was his only source of income.

The flaw with *Russo* and *Tidwell* becomes evident when these cases are examined in light of *Philpott.* In *Philpott* no source was designated for repayment in the agreement between Essex County and Wilkes, yet the Supreme Court held that Section 407 barred "legal process" to reach the benefits. Thus, whether a source is delineated by the agreement was not relevant to the High Court; the essential inquiry was whether the funds from which repayment is sought were social security benefits. Hence, the fact that the "agreement" between Arles and the court did not specify the source of the funds is immaterial. *Philpott, Id.*

In the present case, *Arles' only income was the social security and disability benefits.* Arles stated that he was unemployed. Specifically, the record states as follows:

Q: Mr. Arles, are you employed?

A: No, sir.

Q: Where do you get your income?

A: Disability.

Q: Okay. What kind of disability is that?

A: Social Security, SSI and Welfare.

Q: How much money do you receive from SSI and Welfare?

A: $336.00 on Social and $64.00 on Welfare.

Q: Do you have any other source of income besides those?

A: No.

Tr. at 3, 4. It was these benefits which, according to the trial court's order, had to be used for repayment to the Bank.[2] The record does not reflect any supplemental income as suggested by the dissent. The only evidence presented on this point was that the benefits were Arles' sole source of income.

As to whether the proceedings before us amount to "legal process," Section 407(a) does not limit its restrictions to those types of process specifically listed, but instead forbids use of all "other legal process." "Legal process" has been defined as proceedings begun by writ, warrant, summons, or order, or all those proceedings which invoke the aid of judicial process or decree. *See Palmer v. First Nat'l Bank of Kingman,* 10 Kan.App.2d 84, 692 P.2d 386, 391 (1984); *Perry v. Lorillard Fire Ins. Co.,* 6 Lans. 201, 204 (N.Y.Sup.Ct.1871). It has also been defined as the means or procedure whereby a court compels compliance with its demands. *McCollum v. Superior Court,* 121 Ariz. 119, 588 P.2d 861, 862 (App.1978); *Cutler v. Cutler,* 28 Misc.2d 526, 217 N.Y.S.2d 185, 188 (N.Y.App.Div.1961).

In the context of Section 407(a), "legal process" has been interpreted in its broadest sense. For example, in *Moore v. Colautti,* 483 F.Supp. 357, 369–70 (E.D.Pa. 1979), *aff'd mem.,* 633 F.2d 210 (3d Cir. 1980), the circumstances surrounding the collection practices constituted "legal process" even though no judicial action was involved. The collection department left the impression with benefit recipients that

legal sanction would be had if repayment was not made. The court held that the term "legal process" encompassed "implied or express threats of formal sanctions, as well as the sanctions themselves or formal legal machinery." *Id.* at 358.[3]

The use of the courts to enforce an agreement between two parties is "legal process." In that respect it is no different from a suit brought to compel enforcement of a contract, or to recover damages for failure to perform under a contract. Arles was forced into court in order to avoid the threat of a judicial sanction in the form of a contempt citation. The contempt action was the procedure by which the court was attempting, through legal channels, to obtain jurisdiction over Arles and force repayment of a contractual debt. As such, it is a "legal process" forbidden by Section 407(a). Although the dissent argues that the trial court's action in holding Arles in contempt for failure to pay is not "legal process," we see no way that a court ordered appearance resulting in his being held in contempt for failure to repay a loan can be anything but legal process. The court thus threatened to use unauthorized judicial force to coerce Arles to satisfy his debt from federally exempted funds.

We find 42 U.S.C. § 407(a) and its interpretation as per *Philpott* to be controlling. Because Arles had no source of income other than the social security and disability benefits, we find that the trial court erred by ordering satisfaction of the judgment by installment payments of $50 per month. The opinion of the Court of Appeals is vacated. The Writ of Prohibition is granted prohibiting the enforcement of the order of the Trial Court.

OPALA, C.J., HODGES, V.C.J., and LAVENDER and KAUGER, JJ., concur.

---

**2.** The dissent suggests that Arles had other "potential" sources of income, and thus Section 407(a) is inapplicable. The flaw with this argument is that regardless of "potential" income, Arles' sole source of income was Social Security and disability benefits. *Philpott* and Section 407 deal with present income.

**3.** In *Wyatt v. Dept. of Public Welfare,* 75 Pa. Cmwlth. 347, 463 A.2d 64, 67 (1982), the court upheld the collection process of the Department of Public Welfare because the caseworker merely demanded repayment, but did not coerce or threaten legal action. *See also Tunnicliff v. Dept. of Public Welfare,* 483 Pa. 275, 396 A.2d 1168, 1171 (1979).

SIMMS, J., concurs in part; dissents in part.

DOOLIN, HARGRAVE and ALMA WILSON, JJ., dissent.

SIMMS, Justice, concurring in part, dissenting in part:

Although I agree with the majority's treatment of exemption of social security benefits, I dissent from its sua sponte transmogrification of the appeal into a special proceeding.

DOOLIN, Justice, with whom HARGRAVE, Justice, joins, dissenting.

I cannot agree with the majority that a social security recipient is entitled to a discharge of his legal obligation to make monthly payments to a judgment creditor. In my opinion, the authorities cited by Arles and relied upon by the majority, 42 U.S.C. § 407(a) and *Philpott v. Essex County Welfare Board, supra,* have absolutely nothing to do with the matter in question. There is no evidence in the record which indicates, or even suggests that any legal process has been used to reach Arles' social security benefits. The Court decides today an issue which is not substantiated in the undisputed facts presented for review. I dissent.

Arles' social security benefits started in 1979. Nevertheless, Arles had two outstanding loan obligations to bank, and in November, 1981, he consolidated those loan obligations, and received a $8,678.00 cash disbursement. Under the terms of the promissory note, Arles promised to pay bank 30 monthly installments of $289.27, with the first payment due in January, 1982. Arles used a 1975 Chevrolet Monte Carlo and a 1978 Ford Ranger as collateral; however, both vehicles were released and bank took a security interest in a 1974 Plymouth Suburban Station Wagon.

Arles and his son (not a party herein) then executed another promissory note with bank for $2,296.08 in January, 1982. Under the terms of this second note, Arles and his son promised to pay bank 24 monthly installments of $95.67. Arles and his son used a 1977 Ford LTD as collateral.

Bank then took a security interest in a 1976 GMC Pickup Truck. After making payments for approximately one year, Arles defaulted on both loans. The amount due on the two notes were $5,936.31 and $1,501.57, respectively. Bank obtained default judgments against Arles. Subsequently, Arles and bank negotiated an agreement, which substantially reduced Arles' former monthly payments of $289.00 to $60.00. The trial court ordered Arles to answer as to assets, income and property.

During the assets hearing, the trial court determined *the parties had previously entered into a post judgment agreement.* The trial judge stated: "based upon the facts solicited from the defendants at said hearing that they are capable of making such payments and that the agreement of the parties should be approved." *See, e.g., Dickason v. Dickason,* 607 P.2d 674, 677 (Okla.1980). The trial court, undoubtedly gave effect to the parties' intent at the time of contract formation, and entered an order approving the parties' installment contract, directing Arles to make monthly payments of $60.00 to bank. *Mercury Investment Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985). The trial court's order does not require Arles to assign or transfer his social security benefits to bank, nor does it specify or delineate any source for repayment of Arles' obligation. Arles did not appeal from that order, or the earlier default judgment rendered against him.

As maker of the promissory notes, Arles unconditionally promised and legally committed himself to pay bank a fixed sum of money at a definite time. *Price v. Mize,* 628 P.2d 705, 706 (Okla.1981). The promissory notes and stipulated installment contract between Arles and bank makes no reference to any particular fund as the means or source of Arles' repayment. *West v. Anderson,* 171 Okla. 165, 42 P.2d 543 (1935). There is not one iota of evidence that Arles' promise to pay bank was involuntary.

Arles made no honest effort to comply with his contractual obligation, incorporated into the trial court's order. Bank made

numerous applications for contempt citations and bench warrants against Arles. Almost three years later, Arles was arrested for failure to appear pursuant the trial court's order.

During this hearing on the trial court's indirect contempt action, Arles requested court appointed counsel, and was released on his personal recognizance. Subsequently, Arles filed a motion requesting that the trial court "exempt from execution those benefits received under the Social Security Act."

The trial judge did not conclude that Arles had no other sources of income. At the contempt proceedings, bank asserted, Arles testified, and the district judge believed that Arles had worked temporary jobs performing construction and manual labor for Jackson Roofing Company and one L.G. Kirkland. It can hardly be said that Arles had no other potential sources of income, or that his "only income was social security and disability benefits." In fact, Arles testified that his monthly living expenses were $532.00. However, he only received $400.00 in social security and disability benefits. The fact finder stated: **"the Court feels like that there were means, *where be it limited,* for payments to be made in this account, ...,** but the defendant *[Arles] failed to appear before this Court on the Court's order to show and to establish this."* Moreover, Arles acknowledged that he agreed to pay bank the sum of $60.00 a month, and *he testified that he could make monthly payments of $25.00.*

The majority's opinion is premised upon the exaggerated assertion that the trial court has compelled Arles to repay the loan in order "to avoid the threat of a judicial sanction in the form of a contempt citation." Arles' arrest and imprisonment was not imposed for his failure to pay the loan. What the majority neglects to mention is that *Arles had evaded and ignored the trial court's orders to appear and report his assets.* The power of the district court to enforce judgments and orders carries with it the separate power to make inquiry concerning any failure to obey them.

*Smith v. Speed,* 11 Okla. 95, 66 P. 511 (1901). *See also, Dickson v. Dickson,* 637 P.2d 110, 113 (Okla.1981). In my opinion, the record before this Court demonstrates rather clearly that bank was attempting to reach supplemental income earned by Arles. This is why bank repeatedly requested Arles to appear and report his assets. However, these crucial facts, clearly reflected in the record, escape the majority's analysis.

The Court of Appeals found no error in the trial court's order, and concluded that bank's action against Arles did not constitute an execution, levy, attachment, garnishment, or "other legal process" directed against Arles' social security and state assistance benefits. In this regard, the appellate court, citing *Tidwell v. Schweiker,* 677 F.2d 560, 568 (7th Cir.1982), *cert. denied* 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983), as persuasive authority, noted other jurisdictions "have differentiated between the prohibited actions under § 402 and agreements in which the beneficiary became obligated to pay back a loan without any reference to the source of repayment." *See Moore v. Colautti,* 483 F.Supp. 357 (E.D.Pa.1979), *aff'd mem.* 633 F.2d 210 (3d Cir.1980) (federal court upheld as constitutional Pennsylvania Department of Public Welfare's policy requiring individuals who received state-administered assistance pending federal approval of Supplemental Security Income benefits to sign a repayment/reimbursement agreement providing that state assistance was a loan which must be repaid), and *Tunnicliff v. Commonwealth of Pennsylvania Dept. of Public Welfare,* 483 Pa. 275, 280, 396 A.2d 1168, 1171 (1979) (*Philpott* "does not, however, obviate the underlying obligation of the debtor who remains liable for the debt."). *Accord, French v. Director, Michigan Dept. of Social Service,* 92 Mich. App. 701, 285 N.W.2d 427 (1979).

I agree with the appellate court's statement that it was not the intent of Congress or the legislature to deprive Arles of "his right to dispose of his income as he pleases, or to deprive a creditor from enforcing his creditor's rights against the recipient of social security benefits. (Arles) in signing

the promissory notes did not subject his social security benefits to any legal process or transfer control of social security benefits to this creditor." In other words, what Arles does with his money once received is his own business.

It is difficult for me to comprehend the majority's analysis, which dons a bankruptcy hat, and frustrates the parties' installment contract, which was put into effect through the district court's order. Contrary to the majority's assertion, bank has used no prohibited legal process against Arles in its attempt to enforce the district court's order which merely approved the stipulated installment contract, voluntarily executed between the parties. Nothing in § 407 prohibited the district court from considering Arles' social security benefits in determining Arles' ability to pay bank. *See, e.g., Meadows v. Meadows,* 619 P.2d 598, 600–601 (Okla.1980). Nothing in § 407 prohibits a creditor from suing and obtaining a judgment against a social security recipient. *Philpott* is inapposite and factually distinguishable from this case.

In *Philpott,* the county welfare board filed its reimbursement agreement in the Essex County Court, which under New Jersey law had the binding effect of a final judgment. The welfare agency then sought to *garnish* Wilkes' bank account held by Doris Philpott, Wilkes' trustee. As the majority concedes, a source of repayment, although not delineated in the agreement, was definitely designated and targeted by the welfare board. *"Philpott* does not suggest that the entry of the New Jersey judgment representing the amount for which the recipient of welfare benefits was liable to make reimbursement constituted a violation of § 407. *The Essex County Welfare Board encountered the bar of § 407 when it sought to (garnish) the social security funds on deposit for the benefit of the recipient."* State Central Collection Unit v. Stewart, 292 Md. 255, 438 A.2d 1311, 1313 (1981) [emphasis added].

In the instant case, however, Arles had voluntarily established a debtor-creditor relationship with bank. Arles consolidated his loans, defaulted, and then negotiated an installment contract to repay his debt. For almost three years, bank, after tracking down Arles from county to county, has not attempted to attach Arles' social security benefits as they are received, nor has bank attempted to garnish Arles' bank account, if he has one, or reach any social security funds held by Arles' son, his representative payee. Query: Where's the legal process? The record does not support the majority's position that legal process is being used to reach Arles' social security benefits.

I again emphasize: *what Arles does with his social security benefits once received is his own financial affair.* In *Russo v. Russo,* 1 Conn.App. 604, 474 A.2d 473, 476–77 (1984), the Appellate Court of Connecticut observed:

> The payment by the (recipient) of his own liabilities out of his own funds, whether those funds consist of social security benefits or other types of income, is not prohibited by federal law. A social security disability benefit is a source of income designed to provide periodic sums from which the recipient can expend funds necessary for his own support or the support of his dependents. Although a creditor may not garnish a bank account in which social security recipient of disability benefits has deposited his checks; nothing in 42 U.S.C. § 407 prevents the use of funds, when received, to pay loans or debts for which the beneficiary is obligated where the agreement to repay does not delineate the source of repayment. Here, the court's order does not subject the social security benefits to legal process or transfer control of them to anyone else or designate them as the source of the payments. The order, therefore, does not contravene the federal statute. (citations omitted).

The majority's decision may have a more immediate impact which the majority does not consider. In setting aside the district court's order, bank cannot enforce the parties' installment contract. Arles escapes his legal duty to pay his just debts. Through legal theatrics, the majority nullifies Arles' promise to pay bank, and im-

pairs his contractual capacity. The Court ignores the practical problems posed by its decision, for the court dodges the critical question underlying the collection method used by bank.

When viewed in its full implication, Arles' commitment to repay bank is no different from any other commercial retail installment contract. Oklahoma citizens with fixed incomes, whether social security, retirement or welfare benefits, should have the right to borrow money, or purchase merchandise by executing installment contracts to repay the debt owed. However, the decision of the majority unobtrusively sanctions a form of invidious economic discrimination against those with fixed incomes. Such recipients can now legally escape liability by contending that their only source of income is exempt from legal process. *No rational creditor will extend credit to those with fixed incomes if the debt cannot be enforced in a court of law.*

I would conclude that the district court's order does not violate § 407, or the United States Supreme Court's decision in *Philpott.*